The Savannah and Charleston Railroad Company *vs.* Callahan *et al.*

---

THE SAVANNAH AND CHARLESTON RAILROAD COMPANY, plaintiff in error, *vs.* DANIEL CALLAHAN *et al.*, surviving partners, defendants in error.

1. The contract price of the whole work was $475,000 00 in bonds; not the aggregate amount of the estimates, either in cash or in bonds at the agreed rate.

2. The estimate cash prices of the work in detail, and the agreed rate at which bonds were to be counted when advanced on the estimates, were both provisional, and were intended for use in the temporary monthly settlements only. As the estimates were not to be the ultimate measure of compensation, so the agreed rate for the bonds was not to be the ultimate measure of their value.

3. For default in paying bonds, the measure of recovery is the actual value of the bonds when they ought to have been paid, with interest thereon.

4. The stipulation in the contract for retaining ten per cent. of the cash estimates until the completion of the work, provided that not more than $25,000 00 in bonds at par should be retained as security, and in case of failure by the contractors to execute the terms of the instrument, then the amount so retained to be forfeited to the company, is in the nature of penalty and not stipulated damages. At all events, time is not so clearly of the essence of the contract as that the forfeiture of the whole sum would follow solely because the work was not completed by the last day fixed in the covenant, though it was completed in about one hundred days thereafter, and accepted by the company. This construction is favored by the fact that a part of the work was to be finished by one time and the balance

by another; and, moreover, the contract contained a general safeguard on the element of time, which the company voluntarily failed to make use of, namely, a power in the chief engineer, in case the work should not be prosecuted with proper diligence, so as to insure its completion at the time specified, to put on an additional force at the expense of the contractors: See *51 Georgia Reports, 348.*

5. As the record contains no sufficient evidence of the actual value of the bonds at the time or times of default in making payment, the judgment refusing a new trial is reversed on terms.

Contracts.    Time.    Damages.    Before Judge TOMPKINS. Chatham Superior Court.    May Term, 1875.

Callahan and Drane, as surviving partners of the firm of McDowell, Callahan & Company, sued the Savannah and Charleston Railroad Company on an account. Their demand was set out in different forms in as many different bills of particulars, but may be briefly stated as follows:

1. For balance due on a contract to reconstruct a part of the Savannah and Charleston Railroad for the fixed amount of $475,000 00 in bonds of the company, of which $430,000 00 had been paid, leaving unpaid $45,000 00 in bonds, which, reduced to currency at eighty cents in the dollar, amounted to . $36,000 00
2. For extra work not included in the contract, . . . . . . . .   6,336 38
3. For interest accruing on an account current between the parties, . . . . . . . . . . . . . . . . . . . . . . . . . . .  14,000 00

       Total, . . . . . . . . . . . . . . . . . . . . . . . .$56,336 38

The substance of the plea was as follows:

The work done and materials furnished were under a written contract made on May 10, 1869. The agreement of McDowell & Callahan was to do the work and furnish the material specified by January 1st, 1870, which time was afterwards changed by consent of both parties to December 1st, 1869. They were to be paid at different rates of compensation for the various classes of work and materials provided for. The company agreed to pay the contractors upon and according to monthly estimates of the work done and materials furnished, to be made by the engineer of the company at the rates specified, in the following manner, viz: Ninety per centum of the amount of each monthly estimate

to be paid in certain bonds of the company, which the contractors were to receive at the valuation of eighty cents in the dollar; and the remaining ten per cent. of the amount of each monthly estimate, in bonds, to be reserved by the company as security for the performance of the contract, until such reservation should amount to $25,000 00 in bonds. This reservation of $25,000 00 in bonds was to be finally delivered to the contractors upon the performance of their part of the contract by the time and in the manner specified; but to be retained by the company as stipulated damages in the event that the contractors should fail to perform by the time and in the manner specified. The company agreed, if the contractors would finish by the time and in the manner specified, to pay them, over and above the aggregate of the monthly estimates, as much more in bonds as would make up the round sum of $475,000 00 in bonds.

The contractors did not complete their contract by December 1st, 1869, and not until March 11th, 1870; and thus, as the contingency had not happened in which alone the company had agreed to pay more than the aggregate of the monthly estimates, it not only never came under any duty to pay more, but was entitled to retain the reserve of $25,000 00, as stipulated damages. The aggregate of the monthly estimates, expressed in bonds, was $462,625 14; and this was the value of all the work done and materials furnished by the contractors, at the prices fixed by the contract. The company paid the contractors $430,000 00 in bonds, and retained the reserved $25,000 00, leaving unpaid when the work was completed $7,625 14 in bonds; equal, in currency at the market value (seventy cents) of the bonds at that time, to $5,337 60.

The answer wholly denied the claim for extra work; it also denied the claim for $14,000 00 for interest, as stated in the petition, but admitted a debt of $2,101 19 on that account. And thus the whole amount in currency which the company admitted to be due was $7,438 79.

The contract, which was the basis of this action, contained the following material stipulations: "In consideration of the

payments and covenants hereinafter mentioned, the said Mc-Dowell & Callahan, party of the second part, agree. and promise to furnish all necessary material, and to construct in a substantial and workmanlike manner, and to the satisfaction and acceptance of the engineer of the said railroad company, all that portion of the railroad company's road from the west end of Coosawhatchie trestle to its junction with the Central Railroad of Georgia.

This work consists of about forty-one (41) miles, including turn-outs, of clearing, grading, and track-laying, supplying ninety thousand (90,000) cross-ties, etc., etc.

\*    \*    \*    \*    \*    \*    \*

" CONDITIONS.—Messrs. McDowell & Callahan agree, upon the execution of this instrument, to commence the work at once at Coosawhatchie and Savannah trestle and bridge, and open the road to the Savannah river by the first of October, eighteen hundred and sixty-nine, and to the junction with Central Railroad of Georgia by the first of January, eighteen hundred and seventy."

\*    \*    \*    \*    \*    \*    \*

"It is mutually covenanted that monthly estimates of the work done by said McDowell & Callahan shall be made by the engineer of the company on or about the first of each and every month, beginning first of July, 1869, ninety (90) per cent. of which will be paid the contractors in the seven per cent. first mortgage bonds of the company, authorized to be issued by an act of the general assembly of the state of South Carolina, entitled 'An act to enable the Savannah & Charleston Railroad Company to complete their road,' passed on the second day of March, A. D., eighteen hundred and sixty-nine, at eighty (80) cents on the dollar, and ten (10) per cent. retained until the completion of the contract; *provided* that not more than twenty-five thousand dollars of the bonds of the company at par shall be retained as security when payment in full shall be made. In case the contractors fail to execute the terms of this instrument, then this amount so retained to be forfeited to the company. Nevertheless, it is

understood that the iron rails, chairs, frogs, and spikes, will be paid for in full upon being landed in Charleston or Savannah."

"And in consideration of the full and faithful completion of all work, of whatever character, between Coosawhatchie and the Central Railroad junction, in the time and manner specified, then the company agrees to pay to the said Messrs. McDowell & Callahan four hundred and seventy-five thousand ($475,000 00) dollars of their above-described seven per cent. first mortgage bonds, issued for the re-building of their road, less previous payments made to said McDowell & Callahan."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"It is further mutually agreed by and between the parties to this contract, that should the party of the first part fail to comply fully and severally with the terms and conditions of this instrument, then the said Messrs. McDowell & Callahan, party of the second part, shall be exonerated fully and freely, as far as they are concerned, from the terms, conditions and covenants of this contract."

The jury found for the plaintiffs as follows:

Balance due in bonds, $45,000 00, at 80 cents,...$36,000 00
Extra work (for detention, engines, etc.,)..........    400 00
Interest account,.......................................  2,101 19

Interest was allowed on the first two items, from March 11, 1870, (date of completion of work,) and on last, from October 1st, 1870.

The only finding questioned here is the first. It was admitted that the work was well done, but it was not finished in the time originally or subsequently agreed upon, and on this account the parties were at variance.

The plaintiffs contended as follows:

1st. That they were relieved from their obligation to finish the work in the time agreed upon, by the conduct of the defendant in permitting the work to go on without objection after the appointed time had expired; by continuing after that time to make estimates and payments; by accepting and

using the road when finished; by failing to put extra labor on the road when notified that it would not be finished in time as per contract.

2d. That if wrong in this, then the contract price was $475,000 00 in bonds and not $462,625 14 in bonds; that the balance due is $45,000 00 and not $32,625 14 in bonds; that the $25,000 00 in bonds, which was to be retained as security when payment in full was to be made, was a penalty and not liquidated damages; that the defendant has neither recouped its damage nor filed any defense setting up special damage caused by the delay in time; that it has claimed the right to retain the $25,000 00 in bonds solely upon the issue that they were liquidated damages.

3d. That if they have not been relieved as to time, and if the $25,000 00 in bonds are stipulated damages, then the $25,000 00 in bonds were to be held as security when payment in full was made; that payment in full meant the payment of $475,000 00 in bonds and not the $462,625 14 in bonds, and if the damages are to be retained, they must be taken from the balance of $45,000 00 and not from the balance of $32,625 14. That if this view be correct, then there would be still due $20,000 00 in bonds.

The position of defendant is fully set forth in the above synopsis of the plea.

The evidence did not show the value of the bonds to be paid, at the time or times of default on the part of defendant in making payment.

The court charged the jury substantially the law as laid down in the first two positions of plaintiffs and refused to charge to the contrary, in accordance with the view of defendant.

The court also refused to charge that the plaintiffs were entitled to recover no more than the market value of the bonds they were to receive when the work was finished; but, on the contrary, instructed the jury that the value of the bonds was fixed by the contract at eighty cents in the dollar, and that the plaintiffs were entitled to recover the value of the

bonds due them on the completion of the work at this percentage.

A motion was made for a new trial on account of error in the charge and in the refusals to charge, and because the verdict was contrary to the law and the evidence. The motion was overruled, and the defendant excepted.

JACKSON, LAWTON & BASINGER, for plaintiff in error.

HARTRIDGE & CHISHOLM, for defendants.

BLECKLEY, Judge.

1, 2, 3. In the argument here, counsel did not insist on an examination of the errors assigned on the charge of the court or on the court's refusal to charge. The question discussed was whether, upon the evidence, including a proper construction of the contract, the verdict could be maintained. We have announced our views very fully in the head-notes. We have no doubt that the contract fixes the agreed compensation for the whole work at $475,000 00 in bonds. No final estimate is provided for. There were to be monthly estimates as the work progressed, but when all was finished then payment was to be completed in bonds, deducting those previously paid on the estimates. What was earned after the last monthly estimate was of no consequence, and no provision was made for ascertaining the amount. As the monthly estimates were provisional, so was the agreed value at which bonds were to be counted when advanced on those estimates. Whether the bonds were worth more or less than the agreed rate, was quite immaterial, if they had all been paid when due; but any failure to pay then entitled the contractors to recover the actual value of the bonds which ought to have been paid, together with interest.

4. There is more difficulty in settling the true construction of the contract as between penalty and stipulated damages. Such questions are among the most vexed in the law. Notwithstanding the hundreds, or perhaps, thousands of cases to

be found on the subject, each case must depend, in a great degree, on its own facts; and we think the facts of the present case give it a closer alliance with penalty than with stipulated damages: 11 How., 461; 10 Mich., 188; 9 Cal., 584; 38 Barb., 643; 1 McMullen, 106; 2 Ala., 425; 7 Pa. St., 470. Under the conduct of other authorities, such as 27 Eng. L. & E., 61, it might not be impossible to rule differently from what we do, but we abide by our deeper and better convictions, influenced somewhat by the special matters to which attention is called in the 4th herd-note. The only complaint of the work was, that it was not finished in time. It was accepted, and the benefit of it was taken by the railroad company. The action is in the statutory form, and is so framed that the rule will apply to it which gives compensation, even where there has been a failure to perform strictly the terms of the contract: Addison on Contracts, 447–8; 13 Metcalf, 42; 2 Smith's Leading Cases, 14—Cutter *vs.* Powell, and notes. It was a question for the jury how much the value of the work, as compared with the contract price, was lessened by delay in completing it; and it was also for them to determine who occasioned the delay. We cannot say that the evidence on these points required a different verdict from that rendered.

5. The verdict is, however, unsupported by the requisite evidence as to the value of the bonds. It is clear that the jury counted them at eighty cents in the dollar, but that was because they were so priced in applying them to the monthly estimates. When applied to the main contract they should be counted at their real value, as we have indicated above. There is no dispute that the unpaid bonds were worth as much as seventy cents in the dollar; and this gives us a basis upon which to order a new trial, on terms. We consequently reverse the judgment, and direct that a new trial be had unless the plaintiffs below shall write off, so as to reduce their recovery by the difference between the unpaid bonds at seventy cents and at eighty cents; and if this shall be done, let the judgment, thus reduced, stand affirmed.