## NILSON *v.* JONESBORO.

Opinion delivered January 7, 1893.

1. *Stipulated sum in liquidation of uncertain damage.*

   A contract for construction of a street railway in a town stipulated that, upon failure to complete it within a certain time, the contractors should forfeit and pay to the town the sum of $500, and, as an earnest of good faith, should deposit with the town council a good and sufficient bond in the sum of $500, conditioned that they would comply with such stipulation. *Held*, that the sum fixed was intended as compensation for breach of

the contract, and that it was a liquidated damage, and not a penalty.

2. *Liquidated damages—Construction of contract.*
    The agreed statement of facts in this case shows that the actual damage sustained by the town on account of the failure of the contractors to build the street railway was fifty dollars. *Held:*
    (*a*) That if the damage referred to consisted of the expenses incident to making the contract, they did not result from its breach.
    (*b*) That the contract did not contemplate compensation for actual damage to the town as a corporation, but to the public by reason of the failure to construct the railway.
    (*c*) That conceding that, after the contract was entered into, it was subsequently ascertained that the damage was capable of assessment, that fact could not be allowed to alter the intention or change the legal effect of the stipulation for liquidated damages.

Appeal from Craighead Circuit Court, Jonesboro District.

J. E. RIDDICK, Judge.

Action to recover $500 alleged to be the damages stipulated by the parties for the breach of a contract by which the town of Jonesboro granted to the defendants, Nilson and others, the exclusive right to build and operate a street railway in that town. The contract is exhibited with the complaint and is as follows:

"This contract, made and entered into by and between the town of Jonesboro, party of the first part, and J. W. Perkins, J. B. Dillon and O. M. Nilson, party of the second part, witnesseth: That, for the purpose of providing for a single track street railway or street railways (tracks to be laid with iron or steel rail), the said party of the first part does hereby grant to the said party of the second part, and their assigns, for the term of ninety-nine years from the date of this contract, the right of way on, over and along Main street from the south side of the right of way of the St. Louis, Arkansas & Texas Railroad to the southern terminus of said street, with

the exclusive privilege of using said street and designated portions thereof, for the purpose of constructing, operating, maintaining and owning said street railway thereon, with all necessary and convenient side-tracks, switches, turn-tables, turn-outs and appendages, and said railway to be operated with horse power or such other power, except steam, as they may elect. But said right and privileges above granted are subject to, and granted upon, the following express conditions and stipulations, to-wit:

"1.   That said party of the second part shall construct and have in active operation, within one year from the date of this contract and passage of this ordinance, their railway along and over the following route, to-wit: on Main street, from the said beginning point to court square opposite the court house, and within three years from said date they are to construct and have in operation the said street railway on Main street from court square to the present southern boundary line of the residence of John C. Hawthorne, said railway to be supplied with at least two cars, which are to be drawn by one or two horses, as the petitioners may determine.

"2.   And, upon their failure to do so, they shall forfeit their right of way and privileges on all portions of said street upon which their said line of railway has not been constructed within the time limit.

"3.   That in case the said party of the second part shall fail to complete its first line of railway, as required in said first condition above, within the period of one year therein specified, they shall, at the expiration of said time, forfeit all their right of way, and their privileges in or by their contract granted, and all such rights or privileges shall cease and determine; and they shall also forfeit and pay the sum of five hundred dollars to said party of the first part; provided, the work of constructing said railway may not have been prevented by plague,

epidemic or other providential hindrances; in which case the time during which such work may have been unavoidably delayed by such cause shall not be counted against said party of the second part; provided, with the allowance of such time, they shall complete such work within the time required in this contract for the completion of the same.

"4.    That all tracks of said railway shall be laid in accordance with the height of the streets, as may now or hereafter be established; and shall always keep and maintain their said railway tracks in good order and repair, so as not to obstruct and unnecessarily interfere with the passing, crossing and traveling of said street by vehicles of any kind. And that no switch, side-track nor turn-out shall be laid over the crossing of any street nor extend to a greater distance than two hundred and fifty feet, without the consent of the council.

"5.    That said party of the second part shall run their cars at all reasonable times for the accommodation of the public, but shall not be required to run them after ten o'clock p. m. nor on the Sabbath day, they reserving the right, however, to do so should they so desire.

"6.    That the rate of fare on said car line shall not exceed five cents between any two points where a passenger may get on and off.

"7.    Said party of the first part shall have and hereby reserves the right to regulate by ordinance the rate of speed of said cars to be run on said railway, and to make all reasonable regulations that may be necessary for the safety and convenience of the public, and for persons traveling on said railway, and to prevent its cars from obstructing or banking up on the streets; or from being operated in such a manner as to become a nuisance.

"8.    Whenever said party of the first part shall permit the construction of steam or horse railways within the limits of said incorporated town, crossing the track

or tracks of this said street railway, and it shall become necessary to take up any portion of said track for such purpose, the same shall be done and relaid by the party of the first part at its own expense, and without unnecessary delay, and, in case of unnecessary delay, the party of the first part shall be liable to the party of the second part for actual damages, to be recovered by an action at law. The above conditions apply also to the laying of water, gas or sewer pipes within said town.

"9. Said party of the second part shall pay to the said party of the first part an *ad valorem* tax on all property which is taxable by law and owned by them, just as other citizens are required to pay.

"10. Said party of the second part shall defend all suits that may be brought against the incorporated town of Jonesboro for any damages resulting to persons or property through any act of omission, neglect, carelessness or misconduct of said party of the second part, or any of its officers, agents, servants or its employees.

"11. As an earnest of good faith on the part of the said second party that they will comply with the conditions and stipulations contained in sub-division number three of this contract, they shall deposit a good and sufficient bond, in the sum of five hundred dollars, to be approved by this council, with the recorder of the incorporated town of Jonesboro, setting forth said conditions and stipulations, before this contract shall have any binding force and effect whatever.

"12. That this franchise shall be granted for the time asked for by said petitioners. But neither they, nor their heirs and assigns, shall sell or dispose of the same to any person nor persons until the completion of said street railway on Main street to court square as is stipulated.

H. J. SMITH, *Mayor.*
O. M. NILSON.

J. W. PERKINS.

"ATTEST:                  J. B. DILLON.

H. C. THORNTON, *Recorder.*

"April 6, 1889."

An obligation, as required by the eleventh clause of the contract, was executed by the defendants with A. M. Davis as their surety. This was also filed and exhibited with the complaint, and is as follows:

"Whereas, a franchise was, on the 11th day of March, 1889, granted to J. W. Perkins, J. B. Dillon and O. M. Nilson, by the town council of the incorporated town of Jonesboro, giving them the right to erect a street railway line on and along Main street in said town, conditioned that they will complete and have the same in operation from a point near the depot to a point opposite court square in said town, within one year from the date of the passage of the ordinance granting said franchise, as is expressed in said ordinance. Now we, J. W. Perkins, J. B. Dillon and O. M. Nilson, as principals, and A. M. Davis, as security, undertake and bind ourselves, heirs and executors, to the incorporated town of Jonesboro, in the sum of five hundred dollars, for the payment of which we bind ourselves respectively, conditioned for the faithful performance of said condition so specified in said ordinance—in which case this bond is void, otherwise in full force and effect. Given under our hands and seals on this 18th day of March, 1889." (Signed and sealed by the parties.)

Davis was not made a party, and the suit appears to be founded on the original contract. The complaint alleges that the defendants failed to construct the railway within the time stipulated or at any subsequent time, and prays judgment for the sum mentioned. The answer states that the sum specified in the contract was a penalty to cover the damages which might be sustained by the

town, and that the actual damages sustained amounted to only $30.

The cause was tried by the court without a jury. The plaintiff read in evidence the contract and bond. Also, from the record of the town council, the proceedings showing the passage of an ordinance granting to the defendants the right and privileges stipulated for in the contract.

The defendants read in evidence the following agreed statement of facts :

"It is agreed by the plaintiff and the defendants that the actual damages sustained by the incorporated town of Jonesboro, on account of the failure of the defendants to construct the street railway as they contracted to do, are fifty ($50) dollars." This was all the evidence adduced on the trial of the cause.

The court construed the third clause of the contract as liquidating the damages, and gave judgment for the plaintiff for the stipulated sum. A new trial was refused, and the defendants have appealed.

*J. C. Hawthorne* and *Eben W. Kimball* for appellants.

The sum mentioned in the contract was a penalty, and only the actual damages should have been recovered. 20 U. S. 198; 95 Mass. 19; 93 *id.* 132; 16 N. Y. 275; 5 Metc. 61; 85 N. Y. 258; 108 U. S. 336; Story, Eq. Jur. sec. 1314; 2 Sedg. Dam. (7th ed.), 250, and note; 1 Ball & B. 367.

*E. F. Brown* for appellee.

1. By a plain and simple contract, appellants bound themselves to pay $500 in case they failed to comply with the terms imposed. They failed to do so, and they are liable for the amount. 17 Wend. 447; 3 C. & P. 240; 54 Me. 460; 13 N. H. 275; 21 N. Y. 253; 16 Wis. 57; 41 Ark. 315.

MANSFIELD, J.   The only question to be decided in
this case is, whether the sum mentioned in the third
clause of the contract should be treated as a penalty or
as liquidated damages.   Such questions are regarded as
exceptionally vexatious, and the courts have not been
guided to their solution by any rule applicable alike to
all cases.   *Streeper* v. *Williams*, 48 Pa. St. 450 ; *Savan-
nah, etc. Railroad Co.* v. *Callahan*, 56 Ga. 331 ; *Jaquith*
v. *Hudson*, 5 Mich. 123.   The authorities, however, show
that where the intention to liquidate the damages is not
obvious, the stipulated sum will usually be given the
effect of a penalty if it exceeds the measure of a just
compensation and the actual damage sustained is capable
of proof.   1 Sedg. Dam. sec. 406; 1 Suth. Dam. 491;
*Pennypacker* v. *Jones*, 106 Pa. St. 243; *Watts* v. *Cam-
ors*, 115 U. S. 353, 360 ; 5 Am. & Eng. Enc. Law, 25;
Bisp. Eq. 234 ; *Glasscock* v. *Rosengrant*, 55 Ark. 376.
But where the contract is of such nature that the
damage caused by its breach would be uncertain and
difficult of proof, the sum named by the parties is gener-
ally held to be liquidated damages, if the form and lan-
guage of the instrument are not unfavorable to that con-
struction and the magnitude of the sum does not forbid
it.   *Streeper* v. *Williams*, 48 Pa. St. 450, 454; 1 Sedg.
Dam. sec. 416; 1 Suth. Dam. 492, 504, 507, 508 ; *Pierce* v.
*Jung*, 10 Wis. 30 ; *Studabaker* v. *White*, 31 Ind. 211 ;
*Lincoln* v. *Little Rock Granite Co.* 56 Ark. 405 ; *Texas,
etc. Ry.* v. *Rust*, 19 Fed. Rep. 239 ; *Haldeman* v. *Jen-
nings*, 14 Ark. 331.

The facts in the present case do not, we think,
invoke any principle of law not applied by this court in
the case of *Williams* v. *Green*, 14 Ark. 316.   There the
parties had entered into an agreement in writing by which
Williams bargained to Green a tract of land of the value
of $1600, for which Green was to make payment by de-
livering to Williams a stock of goods and certain mules.

The concluding clause of the agreement was as follows:
"In witness of the above trade, we hereby set our hands
and seals, and, on forfeiture of complying with it, on the
part of either Green or Williams, we hereby bind our-
selves, our heirs, etc., in the sum of five hundred dollars
to be well and truly paid." Green having failed to perform
the agreement, it was held that Williams was entitled to
recover the sum of five hundred dollars as stipulated dam-
ages.    In delivering the opinion of the court, Chief Justice
Watkins said:   "It is true the parties have not used the
term, stipulated or liquidated damages, expressive of a
clear intention to negative the idea of a penalty; but, on the
other hand, the instrument has not the form of a penal
bond, where the sum specified would exceed, being usually
double, the amount of value of the subject to which the
contract related; and on the whole, we think these parties
intended that the sum of five hundred dollars was to be
paid by either party to the other, as an agreed compen-
sation for such damages as would result from a refusal
to comply with the trade.   *   *   *   *   The plaintiff
could not be expected to show by evidence what profits
he might have made by the re-sale of the goods and the
mules, or what other losses he may have sustained by so
entire a disappointment in his contemplated arrange-
ments."   In a previous part of the opinion it is said that
"where the damages are at all uncertain or unliquidated,
the parties ought to be allowed to anticipate and stipulate
them if they choose to do so."

The case of *Streeper* v. *Williams*, 48 Pa. St. 450,
involved the construction of an agreement for the sale of
a hotel at the price of $14,000, "of which $3000 was to be
paid at a specified time, when a deed was to be signed;
part possession to be delivered immediately." The
clause of the contract out of which the controversy arose
was as follows: "The parties to the above agreement
doth severally agree to forfeit the sum of $500, say five

hundred dollars, in case either party fail to comply with the terms of this agreement." The court construed the word "forfeit" as meaning "to pay," and held that the sum fixed by the clause quoted was intended as liquidated damages and not as a penalty. The jury in that case found that the actual damages sustained amounted to only $50. But the Supreme Court said, this did not "explain away the intention gathered from the contract." The court, however, in determining that a liquidation of damages was intended, looked not only to the language of the agreement, but considered also its subject matter and the difficulty of measuring the actual loss which would be suffered from the breach of such a contract.

In *City of Indianola* v. *Railway*, 56 Texas, 594, the city had granted to the railway company the right of way through certain streets, and in consideration of this the company had agreed to extend the road a certain distance beyond the city, and executed a bond in the sum of $50,000, as stipulated damages, conditioned for the faithful performance of their agreement. The company failed to perform the agreement, and in a suit on the bond it was held that the sum named therein was stipulated damages. As in the other cases cited, the decision did not turn alone on the language of the bond, but was equally controlled by the consideration that no accurate computation of the real damages could be made.

In the case at bar the appellee is a municipal corporation, and could not in its corporate capacity suffer any injury by a breach of the contract. If an actual loss was contemplated by the stipulation in question, it could only therefore have been such as would result to the public. And as the parties must have known that it was wholly impracticable to measure this by any rule of damages, it is reasonable to suppose that they intended to fix by the terms of the contract the precise sum recoverable for its breach. *Clark* v. *Barnard*, 108 U. S. 436,

460.  The stipulated sum is not so large as to be sugges-
tive of an intention to make it a penalty, and no argument
in favor of treating it as such can be drawn from the
form or language of the instrument.  The phrase, "for-
feit and pay," found in the third clause, when construed
with all the other provisions of the contract, cannot be
reasonably taken to have any other meaning than
that, in the contingency there mentioned, the appel-
lants would become liable to pay and should pay
to the appellee the sum of five hundred dollars.  The
separate obligation executed by the appellants with
Davis as their surety was expressly required, by the
eleventh sub-division of the contract, as a security for the
performance of the condition embraced in the third clause;
and the only act the third clause binds the appellants to
perform is the payment of the sum it specifies on their
failure to complete the first line of the proposed railway
within one year from the date of the contract.  Although
the collateral obligation thus taken is somewhat in the
form and phraseology of a penal bond, its only effect is
to bind the obligors to pay the sum specified in the third
clause of the original contract on the condition in that
clause stated.  It does not therefore aid the appellants'
contention.

But it is argued that as the damage sustained by
the appellee is shown by the agreed statement of facts,
the case was not one in which the uncertainty of the
damages would probably move the parties to a stipula-
tion of the sum to be paid.  To this it may be answered :
First, that if the damages referred to in the agreed
statement consisted, as suggested by counsel, of the
expenses incident to the making of the contract, they did
not in fact result to the appellee from its breach.  Sec-
ondly, it cannot, as already stated, be supposed that the
contract contemplated a compensation for any actual
damage to the appellee.  And thirdly, conceding that it

was subsequently ascertained that the damages were capable of assessment, that fact could not be allowed to alter the intention or change the legal effect of the stipulation. *Pierce* v. *Jung*, 10 Wis. 30; *Streeper* v. *Williams*, 48 Pa. St. 450.

We conclude that the judgment of the circuit court is right, and affirm it.