WHITING *v.* VILLAGE OF NEW BALTIMORE.

MUNICIPAL CORPORATIONS — RAILWAY FRANCHISES — DEPOSIT — LIQUIDATED DAMAGES.

A provision in a franchise granted by a village for an electric road, requiring the grantee to deposit with the village clerk a certified check for $2,000, the same to be returned to the grantee on the completion of the road within the time provided, otherwise to be cashed and the proceeds turned into the village treasury, will, in view of the difficulty in estimating the damages resulting to the public from a breach of the contract by the grantee, be construed as stipulating the damages for such breach, rather than as prescribing a penalty; and this notwithstanding other franchises granted at about the same time contained no such provision.

Error to Macomb; Atkinson, J., presiding. Submitted April 3, 1901. Decided June 4, 1901.

*Assumpsit* by Frederick W. Whiting, trustee, against the village of New Baltimore, for money had and received. From a judgment for plaintiff, defendant brings error. Reversed.

*Silas B. Spier* and *Robert F. Eldredge*, for appellant.

*Bowen, Douglas & Whiting*, for appellee.

LONG, J. This is an action of *assumpsit* to recover the sum of $2,000 deposited by the plaintiff's assignor with the defendant upon the grant of a franchise to construct a certain electric railroad through said village. The case was tried by the court without a jury, and findings of fact and law made by the court, and upon which judgment was rendered for the above amount in favor of plaintiff, with interest from the commencement of suit.

It will not be necessary to set out here the ordinance in full referred to by the court below in his findings. Section 5 of the so-called "Dyar Ordinance" reads:

" This franchise shall be void unless the said grantee, his heirs or assigns, shall, in writing filed with the city clerk of said village within ten days from the date hereof, accept the same and agree to its terms and conditions, and shall further, within thirty days after such acceptance, deposit with the clerk of said village a certified check payable to the village treasurer of said village in amount the sum of $2,000, which said check shall be returned to said grantee, or to his order, upon the completion of said railway within the time herein provided for, and, in case of a default of the construction of said road within the time provided, shall be collected, and the proceeds thereof placed in the village treasury in such fund or funds as the board of trustees of said village may at that time direct."

Section 6 provides:

"Said grantee shall fully construct said railway, and equip the same with cars, and shall commence the operation of said railway by the regular running of cars thereon on or before the 30th day of November, A. D. 1897; otherwise this instrument and ordinance shall be null and void at the option of said board of trustees."

By another section the village reserved the right to grant to others similar rights and franchises on the same streets.

Certain amendments to the findings of fact and law were presented by counsel for defendant and refused by the court. Defendant excepted to such refusal, and also to the findings made. The principal question for consideration is whether, under the facts, this $2,000 is to be treated as liquidated damages or as a penalty.

It is contended by counsel for plaintiff that there is nothing in the record which shows that the idea of compensation entered into the minds of the parties at any time throughout the negotiations; rather, that the record is full of circumstances which show that the parties utterly disregarded any theory of compensation; that this is evidenced by the following facts: That, five days after this franchise was granted, the so-called "Tucker Franchise" was given; that this franchise was almost exactly like the Dyar franchise, and given for the same purpose; that,

though the same possibility of damaging the village existed, no mention was made by the parties as to any sum for compensating the village in case that road was not completed under its franchise; that in November following a second Tucker franchise was granted, substantially like the other two, in which the sum of $500, instead of $2,000, was named. It is argued that, if the village officers considered that the village would be damaged $2,000 by the failure of Mr. Dyar to construct and operate his road by November 30th of the same year, why did they not consider it would incur a like amount of damage by the failure of Mr. Tucker to complete his road, as the two later franchises were nearly identical with the Dyar franchise? Counsel also claim that the fact that the franchise itself was forfeited by failure to operate the road within the time mentioned left the parties in exactly the same condition as they were before; that nothing was done, no streets torn up, no poles or ties strewn about to discommode travelers, no grading or anything else done which in the slightest degree would cost the village any money.

On the other hand, it is argued that this village, containing a population of more than 1,000 inhabitants, without railway facilities, saw the necessity of building the road; that other electric roads had failed of completion, and the authorities desired to make certain that the Dyar proposition would be carried out. Counsel sought to have the court find, in their amended findings presented, that it was the understanding and intention of the members of the village council, at the time of giving the franchise to Dyar, that the sum of $2,000 represented by said certified check should become the absolute property of the village in case the grantee should default in the construction of said railroad within the time specified, and that Dyar, at the time he deposited the check with defendant, understood and intended that he should lose to said defendant the said $2,000 in case he failed to construct said road within the time stipulated therefor in the franchise, and

also that the defendant village and its inhabitants have been deprived of the benefits, if any, which would have accrued to it and them had Dyar constructed his road as contemplated by himself, and as required by the terms of the franchise.

The law permits parties to make such contracts, and, under certain circumstances, to ascertain and fix by the contract the amount of damages for failure to perform. The inquiry in the present case is, Have the parties in fact fixed and determined such damages? It appears that the village officers were desirous of having such a road constructed. The inhabitants wanted a connecting road with other roads leading to Detroit and other cities. Mr. Dyar sought a franchise through the village, and proposed to build, equip, and complete a road within the specified time. He was offered a franchise by the village with the provisions as set forth in section 5, and accepted it, complying with the terms as to depositing the check for $2,000. By the terms of that section, he was to have this check returned to him only on condition that he completed tho road within the time specified. The granting of this ordinance and the acceptance by Mr. Dyar was a binding contract upon both parties, by which Dyar was to have the right to build the road through the village and charge tolls within certain limits, and, if he completed the road within the time limited, was to have his check returned to him. It follows that, unless he did complete the road within the time specified, his check was not to be returned, but was to become the property of the village. He never entered upon the construction of the road. There is no doubt about the terms of the contract. Both parties entered into it with full understanding of the obligations of each. As was said in *Union Street R. Co.* v. *Saginaw Circuit Judge*, 113 Mich. 694 (71 N. W. 1073):

"Both parties entered into it with a full understanding that the situation now existing might arise, wherein the relator either could not or would not pay the amounts which from time to time it agreed to pay. * * * Can

one party to a contract be relieved from its performance because he is unable to perform, and the other still be bound? To so hold would be to introduce a new element in determining contractual rights. The universal rule is that he who fails to perform, from whatever cause, must suffer the consequences which he has agreed to suffer. * * * In this case the city is proceeding in exact accordance with the terms of its contract, and it requires no citation of authorities to show that, when a party is proceeding in exact accordance with the terms of its contract, courts of equity will not interfere by their restraining process. * * * It [the railway company] attempts to read into its contract that inability to pay shall relieve it from performance. This would result in making a contract in plain violation of the one made by the parties. This courts cannot do."

The contract in the present case is plain and unambiguous. It fixes the condition upon the happening of which Mr. Dyar was to have his check returned; and yet counsel for plaintiff insist that the circumstances surrounding the making of the contract are such that this court must inevitably determine that the money deposited was understood by the parties to be by way of security for performance, instead of damages which the parties themselves had agreed upon if plaintiff failed to perform the contract. It is undoubtedly true that the intention of the parties is the governing consideration. This intention is so plainly and unequivocally stated in the contract itself that it would be of no aid in construing it to take into consideration the surrounding circumstances. The fact that other franchises were granted to other parties with a less deposit of money, or with no deposit at all, is of no importance here, in determining what the parties intended in this particular instance. The parties are bound by the contract made; and one of the questions is, Did they, as shown by the contract, ascertain and determine the amount of damages which should be paid for a breach of its conditions? It is one of that class of cases where the damages for a breach are impossible to be estimated with certainty by reference to any pecuniary standard. In such cases the parties them-

selves, being more intimately acquainted with all the peculiar circumstances, may compute and agree upon the actual or probable damages. This subject is fully discussed by Mr. Justice CHRISTIANCY in *Jaquith* v. *Hudson*, 5 Mich. 123. It was there said by him: ·

"There are great numbers of cases where, from the nature of the contract and the subject-matter of the stipulation for the breach of which the sum is provided, it is apparent to the court that the actual damages for a breach are uncertain in their nature, difficult to be ascertained, or impossible to be estimated with certainty by reference to any pecuniary standard, and where the parties themselves are more intimately acquainted with all the peculiar circumstances, and therefore better able to compute the actual or probable damages than courts or juries from any evidence which can be brought before them. In all such cases the law permits the parties to ascertain for themselves, and to provide in the contract itself, the amount of the damages which shall be paid for the breach. In permitting this, the law does not lose sight of the principle of compensation, which is the law of the contract, but merely adopts the computation or estimate of the damages made by the parties as being the best and most certain modo of ascertaining the actual damage, or what sum will amount to a just compensation."

The rules laid down by Justice CHRISTIANCY for determining whether such damages may be treated as liquidated damages are fully sustained by the text writers on the subject: 1 Sedg. Dam. § 416; 1 Suth. Dam. pp. 491, 492. The same rule is also laid down in *Eureka Light & Ice Co.* v. *City of Eureka*, 5 Kan. App. 669 (48 Pac. 935); *Nilson* v. *Town of Jonesboro*, 57 Ark. 168 (20 S. W. 1093); *City of Indianola* v. *Railway Co.*, 56 Tex. 594; *Peekskill, etc., R. Co.* v. *Village of Peekskill*, 21 App. Div. 94 (47 N. Y. Supp. 305). It may be conceded that the village, in its corporate capacity, suffered no damages by failure to build the road; but the contract was made by the corporate officers for and in the interests of the inhabitants, and for such damages they could and did agree with Mr. Dyar. Upon this question, see *Clark* v. *Barnard*, 108 U. S. 436, 459 (2 Sup. Ct. 878); *Nilson* v. *Town of Jonesboro*, 57 Ark. 168 (20 S. W. 1093).

We think the court below was in error in entering judgment for the plaintiff. That judgment must be reversed, and a judgment entered here in favor of the defendant, with costs of both courts.

The other Justices concurred.