### WILLIAM R. HATTERSLY v. WATERVILLE (VIL.) ET AL.

1. MUNICIPALITIES HAVE GENERAL POWER TO PERMIT AND REGULATE STREET RAILROADS IRRESPECTIVE OF SECS. 2501, 2502, 3437 AND 3439 REV. STAT.

Municipalities of this state have general power to permit and regulate the construction and operation of street railroads upon such reasonable terms and conditions as they may determine, irrespective of the provisions of Secs. 2501, 2502, 3437, 3438 and 3439 Rev. Stat., and regardless of their constitutionality, and as an incident to the exercise of such power, municipalities may regulate the making of bids by third persons for the privilege of building a street railroad and transporting passengers through the streets.

2. VALID CONTRACT BETWEEN MUNICIPALITY AND STREET RAILWAY COMPANY, WHEN.

A valid contract exists between a municipality and an interurban railway company, when the latter, with knowledge of all the terms and conditions upon which a municipality advertised for bids to construct and operate a street railroad through its streets, whereby it agreed to grant a franchise to the lowest bidder, filed a bid and agreed to accept the franchise if awarded to it, which bid being the lowest, was duly accepted and the franchise awarded by ordinance and which franchise the company accepted.

3. FRANCHISE RELATES BACK TO ITS ACCEPTANCE AFTER PUBLICATION.

A street railway company cannot accept a franchise as soon as it is granted by council, and afterward relieve itself of all obligation thereunder, on the ground that the franchise at the time of such acceptance had not been published and gone into effect. The franchise upon going into effect after its legal publication will relate back to the time it was accepted.

4. DEPOSIT OF CHECK BY STREET RAILWAY COMPANY SUPPORTED BY CONSIDERATION, WHEN.

The deposit of a certified check by a railway company with a municipal corporation as a guaranty of its good faith and as a condition required by the municipality to secure a bid made by it for the construction of a street railway through the streets, is not without consideration, in that the municipality gave nothing to the railway company and the company agreed to carry passengers within the municipality free of charge, when it appears that the company desiring a franchise through the municipality, in order to complete its road from terminus to terminus, applied for a franchise and in consequence thereof the municipality advertised for bids to construct a street railroad through it, agreeing to grant a franchise to the lowest bidder, that the company submitted its bid, which being the lowest was accepted and the franchise granted, whereby it was given eleven months within which to build its road, which franchise was accepted by the company.

5. DEPOSITED SECURITY WHEN LIQUIDATED DAMAGES OR PENALTY.

Under the general rule that forfeitures are not favored, a deposit made or bond given to secure the faithful performance of an obligation will be regarded as a penalty and held to be a security for such performance or to secure damages arising from a breach which the party may suffer and prove, rather than liquidated damages or a forfeit to be lost absolutely

in case of a violation of the contract; but where the circumstances are
such, and the contract secured is of such a character that proof of damages.
in case of a breach would be practically impossible, it will be held to be
liquidated damages and the contract strictly enforced.

**6. CHECK DEPOSITED TO SECURE MUNICIPAL FRANCHISE HELD TO BE LIQUIDATED**
**DAMAGES.**

A certified check deposited as required by resolution of the council and the
advertisement for bids, by a street railway company with a municipal
corporation as a guaranty of its good faith and as a security for a bid for
a franchise in the streets for the purpose of constructing and operating.
a railroad, which check was to be kept on deposit as a security that the
company will carry out all the conditions of the franchise and complete
the road within eleven months, and it is provided by the franchise
ordinance which was accepted by the company, that the check should be-
come the property of the municipality unless the conditions of the fran-
chise were complied with, will be held to be liquidated damages and not.
in the nature of a penalty, and will be forfeited absolutely to the munici-
pality if the company fails to commence the road within eleven months;
or carry out any of the terms of the franchise, but entirely abandons the
enterprise.

ERROR to Lucas common pleas court.

**King & Tracy,** for plaintiff in error.

**Smith & Beckwith,** for defendants in error.

**HULL, J.**

This action was brought in the court below by the village of Water-
ville against the Northern National Bank of Toledo, Ohio, and after-
wards William R. Hattersly, the plaintiff in error, was also made a
party defendant. The action was brought on a certified check for
$2,500, drawn by C. E. Sutton in favor of said William R. Hattersly and
afterwards endorsed by him to the village of Waterville. The check
was deposited by the Toledo, Defiance & Napoleon Railroad Company
with the village of Waterville to secure the carrying out of a bid and
guarantee of good faith of such company, which proposed to and did bid
upon a franchise for the construction of a street railroad through
the village of Waterville. The bid of the railroad company was
accepted by the village of Waterville, it offering to carry passengers
through the said village free, and the franchise awarded to it. By the
terms of the franchise many things were required, as is usually the case,
and among other things that the construction of the street railroad
should be commenced as soon as practicable and completed within eleven
months. The franchise further provided that if the conditions of the
franchise were not complied with, the railroad not commenced as soon
as practicable and finished within eleven months, unless delayed by
legal proceedings commenced in good faith, and the other conditions,
this check, then on deposit with the village, should become the property

absolutely of the village. In short, that unless the conditions of the franchise were carried out, the certified check then on deposit should be forfeited to the village of Waterville. This franchise was accepted by the street railway company by C. E. Sutton, its president, he being the same C. E. Sutton who signed the check in question (Sutton being the president, and Hattersly the treasurer of the company, and they seem to have been acting for the company in all these matters). The check was loaned to the company to be used in furthering this enterprise, or at least in securing the bid and as a guarantee of good faith; such a check or that amount in money being required by the resolution passed by the council of the village to be deposited with the bid. .

Hattersly and A. K. Detwiler had filed their applications with the village prior to the bid for the franchise and permission to construct a street railroad, and pursuant to that, bids were advertised for, and, as I have said, the Toledo, Defiance & Napoleon Railroad Company filed a bid, and by it agreed to carry passengers free. The franchise was given to them, as there was no lower bid than this, and could not have been.

But after securing the franchise, instead of carrying out the provisions of the ordinance by which it was granted, they violated all of them and did nothing toward the construction of the street railroad, and at the end of the eleven months provided for, the enterprise was abandoned and the village was left, and apparently is still left, without a street railroad. After the eleven months had gone by, the check was presented to the bank for payment. Meanwhile Sutton had notified the bank not to pay it. He claimed that the money in the bank belonged to him, and the bank refused to pay it. Soon after that, this action was commenced by the village against the bank to collect the certified check; and Hattersly also came in as defendant and claimed to be the real owner of the money. A jury was waived in the common pleas court, and the case tried to the court and judgment given the village for the $2,500, with interest, and this judgment is sought to be reversed here.

Various defenses and objections are made by the bank and Hattersly against the payment of this check. I will take up the claims in order and discuss them very briefly. It is claimed first, that the street railroad statutes of this state are unconstitutional; that is, the statutes regulating the construction of street railroads in municipalities and permitting municipalities to advertise for bids and controlling the proceedings incident thereto; and that therefore this contract, if it was a contract between the village of Waterville and the railroad company, was void, because based upon unconstitutional statutes. It is claimed that they

Hattersly v. Waterville.

are unconstitutional for the reason that they are special legislation and in violation of Sec. 26, Art. 2 of the constitution of the state, which provides against special legislation, and that all laws of a general nature should have uniform application throughout the state. The sections especially involved here are Secs. 2501, 2502, 3437, 3438, 3439 Rev. Stat. It is said that all of these really constitute one act and should be considered together. That perhaps is true and Secs. 2502 and 3438 Rev. Stat. are in some degree special in this, that certain cities are excepted from their provisions. It is urged that these acts are, therefore, under recent decisions of the Supreme Court, unconstitutional and void; and it is possible that they do form a part of the great number of unconstitutional laws that are in the statute books.

But we shall not now determine whether these street railroad statutes are unconstitutional or not. In our judgment it is one of the powers of a municipal corporation, regardless of these statutes, to permit and regulate the construction and operation of street railroads through its streets. A street railway, as has been said many times, is only another mode of conveyance; it is a convenience for the public like an omnibus line or hack line or automobile line or many other means of conveyance that are used. One of the powers of a municipal corporation and the power conferred upon it by the general laws, is, we think, to regulate matters of that kind in its streets. It is one of the general powers of a municipal corporation, and without these statutes, municipalities would have the power to permit a company to construct, maintain and operate a street railroad upon such reasonable conditions and terms as the municipality might fix; and that they might, by virtue of such power, regulate the making of bids by a company or person for the privilege of transporting passengers through its streets. These statutes restrict in some measure and regulate this power of the municipal corporation.

But here was a contract made fairly between these parties, after bids were advertised for upon certain conditions to build a street railroad in a street of the village which offered to grant a franchise to the lowest bidder. This company bid upon these conditions, and, knowing what the conditions were, it agreed to accept the franchise if it was awarded to it; and the city having examined the bids, awarded the franchise to this company by passing an ordinance, and the company accepted it and this makes a contract between the two parties. There is nothing in it against public policy, no reason, so far as we can see why such a contract should be declared void, or why it should need legislation to permit a municipal corporation to make such an arrangement or contract with a

company or with an individual; and without discussing the constitutional question, we hold that this objection to this contract cannot be sustained. We do not mean to hold or intimate that these statutes are unconstitutional, for we have not determined that question, nor considered it.

It is said that there was no consideration for the deposit of this check; that the village gave nothing to the railroad company and the railroad company agreed to carry passengers for nothing, that therefore this arrangement was void, for want of consideration. We think this is untenable. It was said in argument (it does not appear in the record), that this strip of road through the village was only a link or section in a street railroad proposed to be built from Toledo to Napoleon and Defiance. That may be true. But the company was interested in getting a franchise through the village that it might construct its road from terminus to terminus; it applied to the village, or Mr. Hattersly did, for the privilege of constructing the road; the village advertised for bids and pursuant to that, this bid was made, and the franchise ordinance was passed; and it might be a very valuable thing for the street railroad company to have permission to build a road through this street and it may be very prejudicial to the village that it was not built. Wherefore, we are of the opinion that the claim that the contract was void, because without consideration, cannot be sustained.

It is said that the village has lost nothing; that it might have permitted another corporation to build and operate a railroad through its streets. But it had granted the franchise to this company, had given it eleven months within which to build its road, and meanwhile, in the exercise of good business judgment, the council would hardly grant a franchise to another street railroad company to lay its tracks over the streets and encumber this village street with two street railroad tracks running parallel with each other. The village has lost something by reason of the conduct of the railroad company in this breach of contract. It has lost the street railroad which the company agreed to give it; it has lost the privilege and convenience of transportation, which the company had agreed to give it free. It may be true the village has no property in the streets, as is argued, but it has the right under these statutes, or without them, in our judgment, to contract for means of transportation through its streets. The streets of the village are under the general control of the council; certain duties are imposed upon them in regard to their care. While they have no property interest in them, they have the right to use them, to grant permission to use them in the interests of the people and for their convenience. That is what the streets are for.

Hattersly v. Waterville.

It is urged further, that this contract is void for the reason that at the time this ordinance was accepted, it had not gone into effect, because it had not at that time been published. We think this objection cannot be sustained. It was afterwards published as required by law; and when it went into full effect by reason of publication, that would relate back to the time that the ordinance was accepted. The street railroad company could not accept a franchise as soon as it was passed by the council and then relieve itself of all obligation under it on the ground that at the time it was accepted, the franchise ordinance had not yet been published and gone into effect. After the ordinance went into effect by publication, the acceptance still remained on file; no effort was made by the company to withdraw it, and no claim of that kind was made; and it remained on file for the full period of eleven months provided for by the resolution and by the ordinance afterwards passed granting the franchise.

But it is urged further, and this claim is pressed with more force perhaps, and more zealously than any of the others, that the $2,500 check required to be deposited by the resolution of the council as a guarantee of good faith and to secure this bid and afterwards required to be kept on deposit to secure the carrying out of the franchise and ordinance, should not be considered and held to be stipulated or liquidated damages, but in the nature of a penalty; and that the village should not be permitted in any event to receive more than the damages actually suffered by reason of the breach of the contract on the part of the railroad company. No evidence was offered on the trial of the case, of any damage to the village, or to any of its citizens, the court below sustaining the contention of plaintiff that the check for $2,500 was stipulated damages.

It is urged by plaintiff in error that the general doctrine of the courts is, that a deposit of that kind, or a contract of that kind, or a bond of that character will be held to be a penalty, rather than stipulated damages; will be held to be given as security for the carrying out of the contract, or secured for the payment of damages which a party may suffer and which are to be proved, and not as a forfeit to be lost absolutely in case of a violation of the contract. A number of cases have been cited by counsel on both sides; each case depends largely upon the facts in that particular case. The general rule is that courts do not favor forfeitures, and that unless it clearly appears that it was the intention of the parties that the sum mentioned should be regarded as liquidated or stipulated damages, courts are inclined to hold the amount of the

deposits, or the amount of the bond to be a penalty to secure the amount of the actual damages, rather than as stipulated damages. But where the circumstances are such, where the contract to be secured is of such a character that it would be practically impossible to prove the amount of damages, to prove what damages, if any have been sustained, the courts hold that where parties agree that a certain amount shall be held as a forfeit or stipulated or liquidated damages, that such a contract will be enforced to its letter. There are many kinds of contracts, where the amount of damage suffered by a breach thereof, will be almost impossible to prove; such contracts as where parties agree not to engage in a business or profession for a certain period of time may be given as examples. It is urged by counsel for defendant in error that this contract here provides for stipulated damages and thus it should be so held.

In order that we may see just what the contract was, I will read a few lines from the resolution of the village, calling for bids:

"That for the purpose of securing good faith on the part of those filing bids for the said franchise, each and every bid shall be accompanied with a deposit of $2,500 in cash or a certified check on some national bank in Lucas county, Ohio, that if the franchise is awarded to, and accepted by said bidder, that said bidder will carry out the terms and conditions of said grant, and will commence the construction of said road without unnecessary delay and complete the same within eleven months from the date of the passage of the ordinance granting said franchise not counting the time delayed by compulsory legal proceedings instituted in good faith."

It will be noticed that it is to be a deposit to secure good faith that if the franchise is awarded to and accepted by the bidder, that the bidder will carry out the terms and conditions of the grant and ordinance and complete the road within eleven months, etc. Pursuant to that resolution, an advertisement for bids was published, and, as I have said, this bid was made (the bid by this railroad company), upon and under the conditions stated in this resolution, and the check in question was deposited, being drawn by the president of the railroad company in favor of the treasurer of the company and endorsed by him to the village by this endorsement:

"Pay to the order of the village of Waterville, eleven months after the awarding to and the acceptance by the Toledo, Napoleon & Defiance Railroad Company, of a franchise given by the council of Waterville, Ohio, and granting to said company the right to construct, operate and maintain an electric street railroad, under a bid dated and filed January

Hattersly v. Waterville.

28, 1901, with the council of Waterville, and the written acceptance of said franchise by said company, and subject to the terms of a resolution passed and published, notice thereof authorized by said council, on January 3, 1901, relating to said bid and the terms thereof.

(Signed) "WILLIAM R. HATTERSLY."

The resolution referred to being the one from which I have read, and with this endorsement upon it, this check having been certified by the bank, was deposited with the village to secure this bid, and an ordinance granting the franchise was afterwards passed and was accepted by the company. The ordinance was passed February 5, 1901, and was immediately accepted. It contains this language:

"Provided further, if said, The Toledo, Napoleon & Defiance Railroad Company, its successors or assigns shall accept the terms and conditions of this ordinance as herein provided, then the certified check for twenty-five hundred dollars ($2,500) now in the hands of the village clerk as a guaranty of good faith shall remain with him or his successors in office until eleven months from the date of the passage of this ordinance, and if said The Toledo, Napoleon & Defiance Railroad Company, its successors and assigns, at said time shall have completed said railroad and shall have carried out upon its part the terms and conditions of this ordinance, then said check shall be returned to the Toledo, Napoleon & Defiance Railroad Company; otherwise the same shall become and be the property of the village of Waterville, Ohio."

This ordinance was accepted, as I have said, by the railroad company, through said C. E. Sutton, its president. There are many other requirements and conditions in the ordinance in regard to building and operating of the street railroad that it is said this check also secured the carrying out of, and, according to the strict terms of the ordinance, that is true.

The question is whether this check shall be held to be liquidated or stipulated damages, or whether the village shall be required to bring an action for actual damages, if it can maintain such an action, and the check only held to secure the amount of damages which the village can prove it has actually suffered.

In our judgment this check should be held to be stipulated damages and not as a penalty or as a security for damages proven. We think it was the intention of the parties, at least, that it was clearly the understanding of the village and it was known by the other parties that the village so understood it. It is a case peculiarly for the rule of stipulated damages; there are authorities that hold that a municipal corporation

cannot maintain an action for damages upon such a contract as this, unless they are stipulated. The damages in this case are remote and in a measure speculative and it would be difficult, if not impossible, to prove what the damage was to the village or its inhabitants for the failure of the railroad company to build the road through its streets; nor could any citizen be able to show what the damage had been to him or his property; and this being true, it is a case where the parties should be permitted to agree upon a stipulated amount in advance as the damages in case the contract is not carried out.

I shall not undertake to cite very many authorities upon this question. A large number were cited by counsel upon both sides. It does not seem to us that it is a harsh rule to require the railroad company to comply with this contract. Application was made to the village to construct this street railroad. A proper resolution was passed by the village council and an advertisement published asking for bids upon certain conditions, and one of the conditions was a deposit of cash or certified check in this amount to secure the bid and the carrying out of a franchise ordinance, and any person or corporation who bid knew exactly what the conditions were. No one was required to bid or compelled to build a street railroad through this village. If anyone desired to avail himself of the opportunity to construct a railroad there, the way was open for him to bid upon the conditions named in this resolution, and availing himself of that opportunity, this bid was made and the deposit of this check was made by the company according to this resolution, as a guarantee of good faith and to secure the carrying out of the bid and the conditions and requirements of the franchise ordinance thereafter to be passed.

It is said there are many other conditions in this ordinance, some of them trivial in character, which, upon the face of the ordinance are also secured by the deposit of this check, such as the method of laying the track, filling in between the rails, building cross walks, painting poles, putting up wires and many other requirements, and that it would be unconscionable and inequitable to require a forfeiture of this amount for a breach of any one of them. And it is not likely that a court of equity would declare a forfeiture of $2,500 for a breach of one of these minor requirements of this ordinance, but equity would relieve against it. It would be inequitable and unconscionable to require a forfeiture of such an amount of money in all these instances; and if in each case the amount of damage could be readily ascertained it might be a serious objection to holding this to be liquidated or stipulated damages.

The Supreme Court said in the case of Berry v. Wisdom, 3 Ohio St. 241, 244:

"When the agreement is for the performance of several things, and a gross sum is made payable upon a breach of the contract, and some of the things to be performed are of less importance than others, and the damages sustained could be easily ascertained, the presumption would be that the gross sum was not intended to be liquidated damages."

But we think this is not that kind of a case; the breach of this contract is not a case where the damages could be easily ascertained; but is a case where it would be practically impossible to ascertain the damages, and perhaps a case where no damages at all could be recovered, and yet, where we can see that the village, as such, has suffered substantial damages by reason of the railroad company failing to build this railroad as it agreed to do, and to carry passengers as it agreed to through its streets free of charge. This bid being on file and the period of eleven months being given, all other persons or corporations were blocked, practically so at least, from building or offering to build a street railroad through this village. It does not seem to us that it would be a salutary rule of law, a healthy doctrine to hold that a company can bid to construct a street railroad through a municipality as was done here, and offer to carry passengers free and then disregard and violate its contract, do nothing for a period of nearly a year, thus keeping out other companies or individuals absolutely, and then wholly abandon the enterprise and be practically immune from all damages. We can readily see how there might be a purpose with companies or persons to put in sham bids, to keep others from constructing street railroads, and we do not think the law ought to be such as to sustain conduct of that kind. This is not saying that that is true in this case, but that it might be done. In many cases of this character the courts have construed contracts similar to this to be for stipulated damages.

In the case of Brooks v. Wichita, 114 Fed. Rep. 297, the court say on page 299:

"For this reason it is common for municipal corporations, in making contracts of this character, to stipulate for the payment of a fixed sum as liquidated damages in case the public utility is not constructed and put in operation within the time limited by the contract (citing cases). This is the only method by which the city can obtain anything like an adequate compensation for the loss and damage sustained by the public by the breach of such a contract. The sum forfeited as liquidated damages goes into the treasury, and inures to the benefit of the public."

In the case of Peekskill, S. C. & M. Ry. Co. v. Peekskill (Vil.), 47 N. Y. Supp. 305, affirmed without report in Peekskill, S. C. & M. Ry. Co. v. Peekskill (Vil.), 165 N. Y. 628 [59 N. E. Rep. 1128], the village granted a franchise to the railroad company to construct a street railroad through its streets. Among other conditions, it was provided that in the event of failure of the company to construct and operate its road within one year, the sum of $10,000, which it was required to deposit with the treasurer of the village as a guaranty of good faith, should immediately "be and become absolutely the property of the village of Peekskill, for its uses and purposes as liquidated damages for said failure and not by way of penalty. The company never built its road and thereafter sought to recover its said deposit from the village. The court said, page 306:

"It may be that, at the time when this corporation asked for and obtained the grant, others stood ready to furnish what the village was desirous of obtaining. The village has no railroad and is therefore damaged. How much it is damaged may not be, and probably is not, susceptible of proof. It may be damaged in a very large sum, and yet under any legal rule it would be quite difficult, if not impossible to prove its damage. By the terms of the contract the village evidently had in mind three things which it wished certainly to provide for: First, to compel a deposit by the plaintiff as a guaranty of good faith; second, to provide a fund to protect itself from any damage it might sustain by the construction of the road, in the interference with and tearing up of its streets; third, for such damages as it might sustain by a failure to construct the road. As the difficulty of legally establishing its damages under the last two heads would be attended with great embarrassment, and under the last nearly impossible, we think it was the intent of the defendant, fairly to be gathered from the contract and the surrounding circumstances, to contract for this sum as liquidated damages, and not as a penalty."

In the case of Salem (City) v. Anson, 40 Ore. 339 [67 Pac. Rep. 190; 56 L. R. A. 169; 91 Am. St. Rep. 485], the court said:

"2. Where in granting an electric light franchise, a city requires the grantee to furnish bond in a specified sum that the plant shall be completed and in operation by a specified date, and the grantee accepts the terms and furnishes the bond, such sum should be construed as liquidated damages, and may be recovered without alleging or showing any actual damage."

The case of Nilson v. Jonesboro, 57 Ark. 168 [20 S. W. Rep. 1093], is also in point. The syllabus is as follows:

Hattersly v. Waterville.

"1.  By a clause in a contract for the building of a street railway in plaintiff town, defendants, in default of its construction within a certain time, agreed 'to forfeit and pay' the sum of $500 to plaintiff:   *Held,* an agreement to pay liquidated damages.

'2.   By a clause in a contract for the building of a street railway in plaintiff town, defendants, in default of the construction of the railway within a certain time, agreed to 'forfeit and pay' the sum of $500 to plaintiff.   By another clause defendants, as an earnest of good faith on their part to build the railway, agreed to deposit a bond for $500 with plaintiff:   *Held,* that the giving of the bond, though penal in its nature, would not affect a construction of the former clause as an agreement to pay liquidated damages."

We think these cases state the law correctly and lay down the general law of the land upon this question, and the rule laid down is a salutary one.   It is plain, simple and easily understood by all men, and such a rule, if in force, affords a municipality some protection against sham bids and enables it to recover substantial damages for the violation and breach of such a contract as this. . To send the village of Waterville to an action for actual damages to be proven upon a trial would be to practically deny all relief in this case.   We do not think any rule, either of law, or equity requires this.

We are of the opinion that the judgment of the court of common pleas was correct and therefore it will be affirmed.

**Haynes, J.,** concurs; **Parker, J.,** dissents.