Argued 12 December, 1901; decided 13 January, 1902.

## SALEM *v.* ANSON.

[56 L. R. A. 169, 67 Pac. 190.]

Municipalities—Franchise—Validity of Bond.

1. Under a city charter conferring on the municipality power to "contract for water and lights for city purposes, * * * and grant and allow the use of streets and alleys of the city to any person, company or corporation who may desire to establish works for supplying the city and its inhabitants with water or light upon such terms as the council may prescribe," the council may require the grantee of such a franchise to give a bond conditioned that the terms of the franchise will be complied with. Such bond is not beyond the power of the city to require and accept.

Bond to Comply With Franchise—Liquidated Damages.*

2. Where a city has required from the grantee of a public franchise a bond conditioned that the terms of the grant shall be complied with, and the bond has been tendered and accepted, the sum specified in such bond is substantially a statutory penalty, and, upon a breach of the bond, the entire sum may be recovered, without proof of special injury.

From Marion: Geo. H. Burnett, Judge.

---

*Note.—For collections of authorities on whether the sum named in a bond is a penalty or a liquidated sum, see 85 Am. St. Rep. p. 479, and 56 L. R. A. 169.—Reporter.

This is an action on a bond executed by F. R. Anson, as principal, and the Fidelity & Deposit Company of Maryland, as surety. On May 17, 1900, upon the application of Anson, the Common Council of the City of Salem passed an ordinance, granting to him, his successors and assigns, the right to establish and maintain an electric light plant within the city, and to use its streets, alleys, and highways therefor. Anson, under the terms of the ordinance, was to have the plant so far completed by the first day of April, 1901, as to be ready to serve private consumers, and, in default thereof, was to forfeit the rights and privileges so granted. After the plant should be installed and in operation, he was to pay to the city monthly two per cent. of the gross income therefrom. The city reserved the right of purchasing and acquiring the entire plant at any time, at the actual cost thereof. By section 8 of the ordinance, Anson was required to file with the recorder of the city, within thirty days from its approval, ''a bond in the sum of five thousand (5,000) dollars, lawful money of the United States, with two or more sureties, or a surety or guaranty company, to be approved by the mayor, conditioned that he or they will install the electric plant authorized by this ordinance on or before the first day of April, A. D. 1901, which said plant shall have a maximum capacity of at least one hundred horse power, and that such plant shall be in actual operation on such date.'' Anson filed a written acceptance of the provisions of the ordinance within the time specified, and, in compliance with section 8 thereof, made, executed and delivered to the city the following bond, with the defendant corporation as surety:

''Know all men by these presents, that we, Franklin R. Anson of Salem, Oregon, as principal, and Fidelity and Deposit Company of Maryland, a corporation organized and existing under and by virtue of the laws of the State of Maryland, United States of America, as surety, are held and firmly bound unto the City of Salem, in the County of Marion, State of Oregon, in the sum of five thousand dollars (5,000) lawful money of the United States, for the payment of which sum

well and truly to be made we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents.

Sealed with our seals and dated this May 19, 1900.

The condition of the above obligation is such that, WHEREAS the above bounden Franklin R. Anson has entered into a certain contract or agreement with the said City of Salem, through and by means of a passage by the common council and approval by the mayor of the said City of Salem, of a certain ordinance, known as 'Ordinance No. 387,' of said City of Salem; and the acceptance of the provisions of the said ordinance on his part, whereby the said Franklin R. Anson undertakes and agrees to install within the said City of Salem, Oregon, an electric light plant having a maximum capacity of at least one hundred horse power, on or before the 1st day of April, A. D. 1901, and that the said plant shall be in actual operation on said date: now, therefore, if the said Franklin R. Anson, or his successors and assigns, shall well and faithfully, duly, and fully perform, complete, and discharge said contract, upon his or their part, to the extent of installing within the said City of Salem an electric plant having a maximum capacity of at least one hundred horse power, and shall have the same in actual operation and in condition to furnish electric lights or currents to customers along the route of its lines upon the 1st day of April, A. D. 1901, then (this) obligation shall be null and void and of no effect; otherwise to remain in full force and virtue.''

Anson failed to construct the plant, or any part thereof, as required by the ordinance, and, in May, 1901, the city began this action against him and his surety to recover the sum of $5,000, the amount specified in the bond. The complaint sets out the ordinance and bond in full, but does not allege that the city was damaged in any way by reason of Anson's default. The court below sustained a demurrer to the complaint, and, the plaintiff not pleading further, entered judgment against it, from which it appeals.                          REVERSED.

For the City of Salem there was a brief over the names of
*W. H.* and *Webster Holmes,* with an oral argument by *Mr.
William H. Holmes.*

For the Fidelity & Deposit Company, there was a brief over
the name of *Ramsey & Bingham,* with an oral argument by
*Mr. Geo. G. Bingham.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered
the opinion of the court.

1. The first question is as to the right of the city to take and
receive the bond upon which this action was brought. The
charter of Salem declares that the common council shall have
exclusive power to "contract for water and lights for city pur-
poses, or to lease, purchase, or construct a plant or plants for
water or lights, or both, for city purposes, in or outside the
city limits; provided, that the council, upon making a careful
and accurate estimate of building or purchasing and running
such plant or plants, finds that the same may be constructed or
purchased and run at a much less expense to the city than can
be contracted for with private parties. The expense for
building or purchasing such plant or plants cannot be entered
into except by two-thirds vote of all the legal voters voting at
any general election, or at a special election called by the coun-
cil for such purpose, by a two-thirds vote to incur such ex-
pense, the council may enter into a contract; provided, that
the council may grant and allow the use of streets and alleys
of the city to any person, company or corporation who may
desire to establish works for supplying the city and inhabitants
thereof with such water or light upon such terms and condi-
tions as the council may prescribe" (Laws, 1899, p. 924, § 6,
subd. 6); and "to allow and regulate the erection and main-
tenance of poles or poles and wires for telegraph,  *   *   *
electric light or other purposes,  *   *   *  upon or over the
streets, alleys or public grounds of the city; to permit and
regulate the use of the streets, alleys and public grounds of
the city for laying down and repairing gas and water mains,

for building and repairing sewers, and the erection of gas or
other lights; to preserve the streets, alleys, side and cross
walks, bridges, and public grounds from injury, and prevent
the unlawful use of the same, and to regulate their use''
(Laws, 1899, p. 927, § 6, subd. 26). The legislature has thus
delegated to the city the power of regulating and controlling
the use of the streets by light and water companies, and vested
it with exclusive authority to grant to such companies the
privilege of so using them, upon such terms and conditions as
the council may prescribe. The paramount authority over
streets and highways is vested in the legislature as the repre-
sentative of the entire people. It may, however, delegate to
municipal corporations such a measure of its power as it may
deem expedient, and the local authorities, by virtue of such
delegation, can enact ordinances and local laws, which have,
within their jurisdiction, the force of the general statutes of
the state: Tiedeman, Mun. Corp. § 289.

The granting of authority to public service companies to
use the streets and highways is a legislative act, entirely be-
yond the control of the judicial power, so long as it is within
proper constitutional limitations. It may be exercised directly
by the legislature, or be delegated by that body to a municipal
corporation; and, when so delegated, the municipality has,
within the authority granted, the same rights and powers that
the legislature itself possesses. To that extent it is endowed
with legislative sovereignty, the exercise of which has no limit,
so long as it is within the objects and trusts for which the
power was conferred. It is admitted that the legislature may,
by virtue of its paramount authority, require bonds or under-
takings of the grantees of such privileges, conditioned that
they will construct their works within a specified time, or that
they will otherwise comply with the terms of their grant, and
a municipal corporation to which the exclusive power over the
subject has been delegated may exercise the same right. There
is no express provision in the charter of Salem authorizing
the council, upon granting the privileges to use the streets,
to require that the work shall be done within a specified time;

nor is it necessary. It is given the exclusive power to make
the grant "upon such terms and conditions" as it may pre-
scribe, which necessarily authorizes it to impose such reasona-
ble conditions precedent or subsequent to the granting or ex-
ercise of the franchise as may be deemed necessary or proper,
including a requirement that the grantee shall give a bond,
conditioned as the one in suit: *City of Indianola* v. *Gulf, W.
T. & P. Ry.* 56 Tex. 594. In *City of Aberdeen* v. *Honey,* 8
Wash. 251 (35 Pac. 1097), the power of the municipality was
limited by the terms of its charter, and the court held that,
by reason of such limitation, it did not have the authority to
exact a bond from the grantee of a franchise for a street rail-
way. Hence that case is not authority here. We are of the
opinion, therefore, that the bond in suit was valid, and within
the power of the city to require and accept.

2. The remaining question is as to whether the sum specified
in the bond is to be regarded as a penalty, or as liquidated
damages. It is often difficult to determine whether a sum
stipulated in a contract to be paid on breach thereof shall be
considered as liquidated damages or as a penalty, and there is
a wide divergence of opinion in the adjudged cases on the sub-
ject. The object is, of course, to ascertain the intention of
the parties, as nearly as possible, and to enforce the contract
according to their agreement. In doing this, the courts are
not governed altogether by the language of the contract or
by the term employed to designate the sum to be paid. "If it
is liquidated damages, they will enforce it, though erroneously
called a 'penalty,' and, on the other hand, if it is in the nature
of a penalty, they will not allow it to be enforced, although
the parties have expressly stated that it is to be paid as 'liqui-
dated damages,' and not as a 'penalty'": Clark, Contr. 599.
See, also, 53 Cent. Law J. 183; 19 Am. & Eng. Ency. Law (2
ed.), 400; *Kemp* v. *Knickerbocker Ice Co.* 69 N. Y. 45; *Foley*
v. *McKeegan,* 4 Iowa, 1 (66 Am. Dec. 107). For the construc-
tion of such contracts, as between private parties, certain arbi-
trary rules have been laid down, which, although not neces-
sarily controlling in all cases, are regarded as affording a

general guide by which controversies relating thereto may be determined. Among these are: (1) Where the contract is conditioned for the performance of some collateral agreement, the sum mentioned therein will be presumed to be a penalty, and it is incumbent upon the party desiring to recover the sum named as liquidated damages to show that it was so intended by the contracting parties: *O'Keefe* v. *Dyer,* 20 Mont. 477 (52 Pac. 196); *Davis* v. *Gillet,* 52 N. H. 126; *Dill* v. *Lawrence,* 109 Ind. 564 (10 N. E. 573); and (2) when the actual damages in case of a breach of the contract must necessarily be speculative, uncertain, and incapable of definite ascertainment, the stipulated sum will be regarded as liquidated damages, and may be recovered as such without proof of actual damages, unless the language of the contract shows, or the circumstances under which it was made indicate, a contrary intention of the parties, or it so manifestly exceeds the actual injury suffered as to be unconscionable: 19 Am. & Eng. Ency. Law (2 ed.), 402; Clark, Contr. 600; 1 Sutherland, Dam. (2 ed.), § 283; *Commonwealth* v. *Ginn* (Ky.), 63 S. W. 467; *Malone* v. *City of Philadelphia,* 147 Pa. 416 (23 Atl. 628); *Emery* v. *Boyle,* 200 Pa. 249 (49 Atl. 779); *Taylor* v. *Times Newsp. Co.* 83 Minn. 523 (86 N. W. 760). Where the damages are uncertain and speculative, the presumption ordinarily is that the parties have taken that into consideration in making the contract, and have agreed upon a definite sum to be paid in case of a breach, in order to put the question beyond dispute and controversy and to avoid the difficulty of proving actual damages. It would seem, therefore, that, even if the present case is to be controlled entirely by the rules applicable to controversies between private parties, there is reason for holding that the amount stipulated in the bond should be regarded as liquidated damages, and not as a penalty. The damages, if any, to the city from Anson's failure to build his plant within the specified time, were necessarily speculative and uncertain, if not absolutely incapable of proof. Indeed, it is quite doubtful whether the city could have been damaged in any way by such failure. It could gain nothing in its political or sovereign

capacity by the construction of the plant, and could lose nothing by its nonconstruction. The damages resulting from the loss of the promised share of the gross income of the proposed plant and the right of purchase are not covered by the bond, and, moreover, are so speculative, uncertain, and dependent upon so many contingencies, that they can scarcely be regarded as a subject of judicial investigation.

But, whatever the rule might be as between private individuals, this action is not to be determined wholly by the principles applicable to contracts of that kind. The sum specified in the bond is somewhat in the nature of a statutory penalty for the nonperformance of a duty enjoined by law. The ordinance granting to Anson the right and privilege to use the streets and highways of the city in the construction and maintenance of his plant had the force and effect of a statute, and by his acceptance of its provisions he became bound to comply with its terms as a statutory duty. The bond in question was given as security for the performance of such duty, and the sum specified therein is in the nature of a penalty, to be imposed as a punishment for disobeying or disregarding the pro-visions of the ordinance: *Maryland, to use,* v. *Baltimore & O. R. Co.* 44 U. S. (3 How.) 534. The case of *Clark* v. *Barnard,* 108 U. S. 436 (2 Sup. Ct. 878), is very similar to the one in hand. The legislature of Rhode Island passed an act authorizing the Boston, Hartford & Erie Railroad Company to locate and construct a railroad through the state, but the act was not to go into effect unless the railroad company should, within ninety days from the adjournment of the legislature, deposit in the office of the treasurer its bond, with sureties satisfactory to the governor, in the sum of $100,000, that it would complete the road before the first day of January, 1872. In compliance with this statute, the railroad company made, executed, and filed in the office of the treasurer an ordinary penal bond in the sum stated, conditioned as in the act required. It failed to build the road, and, in a suit to enjoin the treasurer from receiving or collecting the sum specified in the bond, it was contended, as here, that the obligation required by the statute

and given by the company was an ordinary penal bond, upon which no recovery could be had except for the damages the state actually sustained from the breach of its conditions, and, it being admitted that no damages had resulted, the money arising from the payment of a certificate of indebtedness pledged in lieu of sureties on the bond reverted to the plaintiff. This position was sustained by the trial court, but on appeal the decree was reversed, and it was held that the state was entitled to collect the full amount of the bond, notwithstanding ·it was admitted that it had not been damaged by the breach thereof. The judgment is based upon two principal considerations: (1) That it was not, and could not have been, intended by the parties that the bond was a mere indemnifying bond; and (2) that the sum mentioned therein was imposed by the state as a statutory penalty for the nonperformance of a statutory duty.

After pointing out that no damage could possibly have arisen to the state in its sovereign or political capacity by the failure of the railroad company to construct its road as provided in this statute, Mr. Justice MATTHEWS, speaking for the court, said: "The question of damages and compensation was not, because it could not have been, in contemplation of the parties. There was no room for supposing that there could be any. To assume that the statute required this bond and security in this sense, in full view of the legal conclusion which it is said necessarily flows from its form, and that in the event contemplated, of the failure to build the road, all that remained to be done was that the state should hand back canceled the obligation and security it had been at such pains to exact, is to put upon the transaction an interpretation altogether inadmissible. It would have been, upon such an assumption, a vain and senseless thing, and, however private persons may be sometimes supposed to act improvidently, we are not to put such constructions, when it is legally possible to avoid them, upon the deliberate and solemn acts and transactions of a sovereign power, acting through the forms of legislation. The conclusion, in our opinion, cannot be resisted that the in-

tention of the parties in the transaction in question was that, if the railroad should not be built within the time limited, the corporation should pay to the state, absolutely and for its own use, the sum named in the bond and secured by the deposited certificate of indebtedness. The supposition is not open that the penalty was prescribed merely *in terrorem,* to secure punctuality in performance, with the reserved intention of permitting subsequent performance to condone the default, for a distinct section of the statute * * * declares that, in cases of failure to complete the road within the time limited, the act itself should be void and of no effect." In *Nilson* v. *Town of Jonesboro,* 57 Ark. 168 (20 S. W. 1093), the city granted to Nilson the right to construct a street railway over and through the streets of the city, and took from him a bond, in the sum of $500, conditioned for the faithful performance by him of the provisions of the ordinance. In an action to recover on the bond because of his failure to construct the railway within the time specified, the single question presented was whether the sum mentioned in the bond should be treated as a penalty or as liquidated damages, and, after a careful examination of the authorities, it was held that plaintiff was entitled to recover the amount specified, without proof of actual damages, and notwithstanding it appeared that the damages were in fact capable of assessment. In *City of Indianola* v. *Gulf, W. T. & P. Ry.* 56 Tex. 594, the City of Indianola granted a railway company the right to construct its road through one of the streets of the city, on the condition that it should extend it to a point sixty-five miles distant within a certain definite time, and exacted a bond in the sum of $50,000, conditioned for the faithful performance of the grant on its part. The company failed to construct the road, and in a suit on the bond it was held that the sum stated therein was stipulated damages, and that the city could recover the full amount thereof without proof of actual damages. It is true that in that case, as also in *Nilson* v. *Town of Jonesboro,* 57 Ark. 168 (20 S. W. 1093), the term "liquidated damages" was used in the contract. But the decisions did not turn upon

that fact, but were principally controlled by the consideration that no accurate computation of the real damages could be made.

Within the doctrine of these cases, and they seem to be sound, the demurrer to the complaint should have been overruled. The judgment of the court below must therefore be reversed, and the cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.

REVERSED.