**GRAYSON et al. v. CITY OF MARSHALL.†**

(Court of Civil Appeals of Texas. Texarkana. March 13, 1912. Rehearing Denied March 21, 1912.)

1. DAMAGES (§ 78*)—LIQUIDATED DAMAGES OR PENALTY—MUNICIPAL CORPORATIONS.

Under a municipal franchise to operate gas works in a city, which required grantee to give a bond for $5,000 to secure that the plant should be in operation within one year after granting of the franchise, providing that such sum should be considered liquidated damages, in a suit after abandonment of the franchise, brought on the bond given under such provi-sion, that sum must be treated as liquidated damages, and not merely as a penalty.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

2. GAS (§ 6*)—MUNICIPAL FRANCHISES—PER-FORMANCE BY GRANTEE.

Commencement of work on a gas plant in a city under a franchise cannot be treated as part performance of the grantee's obligation se-cured by bond to commence operation of plant within one year, where the work was abandon-ed before any part of the real object of the en-terprise was accomplished.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 1; Dec. Dig. § 6.*]

3. GAS (§ 6*) — MUNICIPAL FRANCHISES — ABANDONMENT—GROUNDS.

Since, under the Texas Constitution, an exclusive privilege to furnish public utilities to a city cannot be granted, the grantee of a franchise for a gas plant is not relieved from liability on his bond given to secure commence-ment of operation of the plant within a year because of any action of the city in reinstating the franchise of competitors, thereby enabling them to commence supplying gas before expira-tion of the time allowed him.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 1; Dec. Dig. § 6.*]

4. GAS (§ 6*)—STREET LIGHTING—CONTRACTS —CONSTRUCTION.

A provision in a municipal gas franchise that the grantee should, if directed by the city, install and maintain street lamps at such points as should be selected by the authorities at a specified rate, did not obligate the city to al-low the grantee to furnish any number of lights; the matter of establishing and locating the lights being optional with the city.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 1; Dec. Dig. § 6.*]

5. GAS (§ 6*) — MUNICIPAL FRANCHISES — BREACH BY GRANTEE—DAMAGES.

Liability of the grantee of a municipal gas franchise on a bond given to secure commence-ment of operation of the plant within one year is not affected on his abandoning the franchise because gas is being supplied through a com-petitor, since the city and its inhabitants were entitled to the benefit of the competition be-tween the two plants.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 1; Dec. Dig. § 6.*]

6. INTEREST (§ 45*)—RIGHT TO ALLOWANCE— BONDS.

On breach of the bond of the grantee of a municipal franchise given for a fixed sum, and to secure operation of the plant within one year from the date of the franchise, interest was properly allowed from the expiration of the time limit.

[Ed. Note.—For other cases, see Interest, Cent. Dig. § 94; Dec. Dig. § 45.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by the City of Marshall against H. S. Grayson and others. Judgment for plain-tiff, and defendants appeal. Affirmed.

F. H. Prendergast, of Marshall, for appel-lants. Beard & Davidson, of Marshall, for appellee.

HODGES, J. On the 10th day of Novem-ber, 1908, the appellant Grayson obtained from the city of Marshall a franchise to use the streets and alleys of that city for the purpose of laying pipes and mains in supply-ing the inhabitants with natural and ar-tificial gas. The material provisions of the ordinance by which this privilege was grant-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

ed are as follows: By section 1 Grayson, his successors and assigns, were authorized and empowered for the period of 25 years after the passage of the ordinance to construct and maintain gas works in the city, and to manufacture, sell, and supply to its inhabitants natural gas and petroleum. By section 3 it was provided that as long as natural gas was furnished and sold to the city of Marshall and its inhabitants under this franchise the grantee should furnish free to the city natural gas for light and heat in the city hall and all offices and departments thereof, including the firehouse and jail. It was further provided that the grantee should, if so directed by said city, install and maintain gas street lamps at such points upon its mains as shall be selected by the duly authorized officials of the city. Other provisions fixed the compensation that was to be allowed. Section 7 required the grantee to be in a position to supply gas to the city of Marshall within 12 months from the acceptance of the ordinance, provided that any delay in laying pipe in or to or through the city caused by injunction, legal proceedings, or any other cause beyond the control of the grantee should not be counted as a part of the period specified. It was also provided that the grantee should begin work in the city within two months after the passage of the ordinance. By section 8 it was provided that within 30 days from and after the time this ordinance should take effect the grantee should file with the city secretary his written acceptance of the provisions; and, in case of failure to file such acceptance within that time, the ordinance should cease and become null and void. Section 10 provided that, when the grantee filed his acceptance of the ordinance, he should also file a bond in legal form in the sum of $5,000 with some bonding corporation authorized to do business in the state as security thereon, and payable to the city of Marshall, conditioned that the grantee should commence work in the city within two months after the passage of this ordinance, and should have a plant in complete operation under this franchise within one year after its passage, said bond to be approved by the city council of Marshall and to become null and void upon the compliance with its conditions; but upon failure to comply with these conditions the penalty of such bond should be considered liquidated damages.

In compliance with the conditions prescribed in the ordinance, Grayson filed his written acceptance of the grant, and on the 24th day of December, 1908, executed the following bond, with the American Surety Company of New York as his surety: "State of Texas, Harrison County. Know all men by these presents: That, whereas, on the tenth day of November, 1908, the city council of the city of Marshall, Texas, by an ordinance finally passed November 10th, 1908, granted to H. S. Grayson of Pittsburg, Penn., his successors and assigns, the right to construct, acquire, and maintain gas lines in the said city of Marshall and manufacture, sell, and supply to the said city and its inhabitants natural gas and petroleum, and the said ordinance required said H. S. Grayson to give bond for the sum of five thousand ($5,000.-00) dollars: Now, therefore, we, H. S. Grayson, of the city of Pittsburg, state of Pennsylvania, as principal, and the American Surety Company of New York, as surety, are held and firmly bound unto the city of Marshall, Texas, in the sum of five thousand ($5,000.00) dollars upon this condition; that if said H. S. Grayson grantee, or his assigns, shall commence work in the city of Marshall within two months after the passage of said ordinance and shall have a plant in complete operation for furnishing gas to said inhabitants under said franchise within one year from its passage, then this obligation is to become null and void, and of no effect, otherwise to remain in full force. Witness our hands this 24th day of December, 1908." On January 6, 1910, the city of Marshall filed this suit, alleging a breach of the bond occasioned by the failure of Grayson to have in operation the gas plant contracted for within the time prescribed in the ordinance and bond, and seeking a judgment for the amount of the bond as liquidated damages. A trial resulted in a judgment in favor of the city for the full amount of the bond, with interest at the rate of 6 per cent. per annum from November 10, 1909.

The assignments of error presented in the record are merely separate and distinct reasons urged assailing the correctness of the judgment rendered, and embrace the substance of appellants' defense as contained in the special answer filed. These assignments may be summarized as follows: (1) That the sum expressed in the bond was named as a penalty, and not as liquidated damages; (2) that appellant had partially complied with his undertaking, and ceased only after the city had reinstated the franchise of Hunter & McCormick, a firm of competitors engaged in a similar undertaking; (3) That at the time appellant's franchise was granted by the city, and the bond executed, the franchise theretofore granted to Hunter & McCormick had lapsed, and, relying upon that fact, appellant obtained his franchise, executed the bond sued on, and spent the sum of $3,700 in complying with his undertaking; that thereafter the city reinstated the franchise of his competitors, Hunter & McCormick, and thereby enabled them to put gas into the city of Marshall before the expiration of the time allowed the appellant; (4) that the city granted a similar franchise to Hunter & McCormick, which included the right to supply gas free of charge to the city hall, jail, and firehouse, and to furnish street lamps at a stipulated price per annum; that, by reason of that fact, the city was not now in a position to comply with its obligations

to both grantees; (5) that the city has sustained no damage by reason of the default of the appellant, because it has obtained from another source the gas which it contracted for from him; that it was not contemplated that two gas companies should engage in furnishing the city with gas; that the judgment is therefore inequitable and unjust under the circumstances; (6) that no interest should have been allowed on the bond prior to the rendition of the judgment.

The evidence shows that the wells from which the gas was to be supplied were located within 27 miles of the city of Marshall. On November 27, 1906, the city granted to Hunter & McCormick a franchise in all material respects similar to that obtained by Grayson. Hunter & McCormick failed to have gas in the city within the time agreed upon in their grant, but an extension of six months was given at their request. This extension expired without any better results, and on September 25, 1908, the city filed suit on the bond given by Hunter & McCormick, seeking a recovery for the amount therein expressed as the damages to which it would be entitled in case of their failure, but no forfeiture of the franchise was asked for. This suit was pending at the time of the grant to Grayson, there having been no trial of the case. Upon obtaining his franchise, Grayson began work within the two months specified in the ordinance, and expended about $3,700 in laying gas pipes and mains in the city. Soon after he began work, Hunter & McCormick renewed their efforts to complete their undertaking of putting gas into the city, and a contest arose between them and Grayson as to which should first succeed. Upon discovering that he would be beaten in the contest by his rivals, Grayson abandoned his efforts before the expiration of the time limit allowed him in the ordinance, and has since then done nothing towards complying with the terms of his grant. The reason assigned in the evidence is that the city was too small to support the business of two competing enterprises of that kind. Hunter & McCormick succeeded in bringing gas into the city in May, 1909; and in October following the suit against them was dismissed. Upon what terms that was done the evidence fails to show.

[1] It is not contended that the contract entered into by the city with Grayson, as embraced in the ordinance, was ultra vires, or for any reason was invalid at its inception. If it was a contract which the parties might make, it logically follows that it will support an action for a breach. In granting to appellant a franchise to use the streets of the city for laying conduits for the distribution of gas to consumers, the city was conceding to the grantee a valuable right in return for a public benefit to its inhabitants. It was acting in its corporate capacity as the agent of the people in procuring the establishment of a public utility for their convenience.

The city had the right to make the concession, and in return to exact security for the payment of such damages as might result from the noncompliance of the grantee with the terms of his contract. The ordinance, the terms of which were accepted by Grayson, provides that the sum specified in the bond should in case of a failure by Grayson to comply with its provisions be considered liquidated damages. This provision of the ordinance, as well as others, was as much a part of the contract as if it had been incorporated in the bond itself. That the sum sued for should, under the facts of this case, be treated as liquidated damages, and not merely as a penalty, is, we think, settled by the following authorities: City of Marshall v. Atkins, 127 S. W. 1148; City of Indianola v. G. W. T. & P. Ry. Co., 56 Tex. 594; Sun Printing & P. Ass'n v. Moore, 183 U. S. 642, 22 Sup. Ct. 240, 46 L. Ed. 366; Brooks v. Wichita, 114 Fed. 299, 52 C. C. A. 209; Whiting v. Village, 127 Mich. 71, 86 N. W. 407; Salem v. Anson, 40 Or. 339, 67 Pac. 190, 56 L. R. A. 169, 91 Am. St. Rep. 485; Nilson v. Town of Jonesboro, 57 Ark. 168, 20 S. W. 1093.

[2] The Atkins Case, above referred to, involved questions and facts very similar to those here under consideration, and is decisive not only of the proposition just announced, but of many other issues involved in the case.

The contention that there had been a partial performance of the conditions of the bond is without merit. It is clear that the ultimate and only purpose sought to be accomplished by the making of the contract and granting of the franchise in question was to procure for the inhabitants of the city of Marshall a supply of gas. The commencement of the work within the two months specified in the ordinance, if subsequently abandoned before its completion and without having accomplished any part of what was the real object of the enterprise, is in no sense a part performance. Such work was of no practical benefit to the city. See City of Marshall v. Atkins, supra.

[3] The further contention that the city reinstated the franchise of Hunter & McCormick, and thereby enabled them to reach the city with their gas pipes and mains before the expiration of the time allowed appellant, is not supported by the facts. The franchise of Hunter & McCormick had never been forfeited, nor was there any attempt to do so involved in the suit pending at the time Grayson obtained his franchise. The grant to Grayson does not purport to be an exclusive privilege. No right of his would be impaired, even had there been a reinstatement of a lost franchise formerly accorded to Hunter & McCormick, or the grant of still another franchise to some other party. G., C. & S. Ry. Co. v. G. C. Ry. Co., 65 Tex. 502; 3 Abbott on Mun. Corp. p. 2146, and cases cited in the notes. Under the Constitution

of this state, an exclusive privilege to provide public utilities to a city cannot be granted. Austin v. Nalle, 85 Tex. 549, 22 S. W. 677, 960; Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143. If no exclusive privilege could legally have been granted to Grayson, and none such attempted, he had no occasion to rely upon the assumption that he was impliedly obtaining any such right. If he executed his bond upon the faith that he was getting a privilege which the law forbids, his deception furnishes no grounds for releasing him from the terms of his contract.

[4] It is further contended that the city of Marshall has placed it beyond its power to comply with its part of the contract. This contention is based upon the assumption that section 3 of the ordinance before referred to gave to appellant a contractual right to supply the city with street lights, and that this right has now been granted to Hunter & McCormick. The language of the ordinance is not susceptible of the construction which this contention places upon it. That provision reads: "The said grantee shall, if so directed by said city, install and maintain gas street lamps at such points upon its mains as shall be selected by duly authorized officials of said city, furnishing and maintaining all lamps, burners, mantles and fixtures at a yearly charge of $18.00 per burner per annum, provided," etc. Then follow specifications as to the number and some modifications in the price to be charged, not necessary to be here considered. There is no evidence that this service is now being performed by Hunter & McCormick, or any one else, or that the city is not in a position to accord to the appellant the privilege which he claims under that provision of the ordinance. Moreover, we do not construe that as an obligation upon the part of the city to unqualifiedly award to the appellant the contract of supplying those street lamps. It was clearly the purpose of the ordinance to leave the establishment and location of those street lights optional with the city, and to make it obligatory upon the appellant to supply them at the prices stated only in the event this should be directed by the proper authorities.

[5] It is claimed that it would be inequitable and unjust, under the circumstances, to allow a recovery upon this bond, because the facts show that the city has sustained no damage, that natural gas is now being supplied from another source, and that the inhabitants have procured all of the conveniences to which they would have been entitled under the contract with the appellant. The evidence does show that Hunter & McCormick have succeeded in putting gas into the city, and that this commodity is now being supplied to the inhabitants at 31½ cents per thousand feet. There is also evidence showing that Marshall is a city of about 12,000 inhabitants, and that it is too small to support profitably two competitive enterprises engaged in supplying natural gas. But it is further shown that, where there is competition in cities, the rate charged is less to the consumer; that this is the natural result of such competition. The purpose of our Constitution in forbidding the creation of monopolies is to keep open opportunities for competition, to the end that purchasers and consumers may be protected against exorbitant charges and inadequate service. The city had a right to insist upon the benefits to be derived from competitive enterprises. If a division of the business rendered it unprofitable to the grantees, that was a matter which affected the value of the franchise only. It was shown that in Shreveport, though only two miles nearer the gas wells, the source from which the supply was taken, gas was being sold to the consumers at 22½ cents per thousand feet. The total annual consumption of gas in Marshall at the rate charged amounted to about $68,500. A reduction of 25 or 30 per cent. in the price of the gas annually consumed would amount to much more than the damages stipulated in the bond sued on in this action.

[6] The allowance of interest on the bond from the date of the expiration of the limit within which the work was required to be completed is also assigned as an error. This bond was a written promise to pay a certain sum, and developed into a matured obligation when appellant failed to do what he expressly undertook and promised to accomplish. The following authorities support the proposition that the interest from that date may be recovered: Yetter v. Hudson, 57 Tex. 610; Queens Ins. Co. v. Jefferson Ice Co., 64 Tex. 583; Clark v. Bernard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780; 22 Cyc. pp. 1505, 1579.

There being no error in the judgment rendered, it is accordingly affirmed.