BANKERS' SURETY CO. v. ELKHORN RIVER DRAINAGE DIST.†

(Circuit Court of Appeals, Eighth Circuit. April 20, 1914.)

No. 4032.

1. PRINCIPAL AND SURETY (§ 100*)—DISCHARGE OF SURETY—CHANGE IN DUTY OF PRINCIPAL.

Changes in the specifications for work to be done by a contractor in straightening a river channel, which were minor in character, and neither added to the expense nor delayed the work, did not release the surety on the contractor's bond from liability.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 162–165; Dec. Dig. § 100.*]

2. DAMAGES (§ 78*)—STIPULATION FOR LIQUIDATED DAMAGES—VALIDITY—DELAY IN PERFORMANCE OF CONTRACT.

A drainage district contracted for the straightening of a river channel, which was an essential part of the work in the construction of a drainage system. The contract required the work to be completed by a stated time, otherwise the district might declare a forfeiture and relet or otherwise complete the work. On failure of the contractor to complete it in time, an agreement for an extension was made and a bond given conditioned that, if not completed within the extended time, the sum of $30 per day from the time of the making of the agreement until completion should be paid by the contractor as liquidated damages. The amount of the damage which would result was uncertain, depending upon weather conditions. Held, that such stipulation was not for a penalty but was valid and enforceable.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

In Error to the District Court of the United States for the District of Nebraska; Thos. C. Munger, Judge.

Action at law by the Elkhorn River Drainage District against the Bankers' Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

H. C. Brome, of Omaha, Neb. (Clinton Brome and A. G. Ellick, both of Omaha, Neb., on the brief), for plaintiff in error.

W. J. Courtright, of Fremont, Neb. (S. S. Sidner, of Fremont, Neb., on the brief), for defendant in error.

Before ADAMS and CARLAND, Circuit Judges, and RINER, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied August 3, 1914.

RINER, District Judge.    This was an action brought by the Elkhorn River Drainage District, defendant in error, against the Bankers' Surety Company, plaintiff in error, upon a bond given to secure the performance of a contract theretofore entered into between the Elkhorn River Drainage District and the Standard Drainage Company for the construction of certain cut-offs along the course of the Elkhorn river, in Dodge and Washington counties, Neb., for the purpose of straightening it and facilitating the passage of water down that stream. For convenience the Elkhorn River Drainage District will be hereafter designated the "district," the Bankers' Surety Company the "surety company," and the Standard Drainage Company the "drainage company."

A trial was had in the district court resulting in a judgment in favor of the district against the surety company for the sum of $14,-850, and this is a writ of error to reverse that judgment.

On the 15th of December, 1909, the district awarded contracts for the construction of 65 miles of drainage work.    The contracts were four in number, to as many different contractors.    The contract for straightening the Elkhorn river, which was to be the trunk line or main stem of all the drainage work provided for under these four contracts, was let to the drainage company, and is the only one with which we have to do in this case.    By the terms of the contract the drainage company agreed to commence the work provided for in the contract on or before the 1st day of March, 1910, and to entirely complete it on or before the 31st day of December, 1910.    The contract also provided, among other things, that all work to be performed thereunder should be done and performed according to certain specifications which were attached and made a part of the contract; that the district reserved the right to change the line, grade, and endings of the work from that shown on the plans furnished; that, if the contractor failed to prosecute the work with sufficient force, in the opinion of the engineer of the district, to insure its completion within the time specified in the contract, the district should have the right to employ such additional force as the engineer might deem necessary to complete the work within that time, or the district might declare the contract forfeited and abandoned; that the contractor should be liable for damages arising from a failure to complete the work within the time specified in the contract; that in the event of delay caused by the district by reason of the failure of the engineer to stake out the work promptly, or from any other cause for which the district was responsible, the time for completion of the work should be extended for a period equal to not less that the aggregate length of time of such delay.    To secure the faithful performance of this contract, the drainage company gave a bond with the Title Guaranty & Surety Company as surety.    During the progress of the work in 1910, the district, as authorized by the contract, made some changes in the line of the excavation work to be performed by the drainage company.

On the 30th of December, 1910, one day before the time fixed by the contract for the completion of the work, only about one-third of

it had been finished, and to avoid a forfeiture of the contract, after some negotiations between the drainage company and the district, the bond in suit was executed and accepted as additional security; the district agreeing not to declare a forfeiture at that time. As the recitals in the bond contain a statement of the facts as they existed at the time the bond was executed, it is here set out at length:

"Know all men by these presents: That we, Standard Drainage Co., of Windom. Minnesota, as principal, first party, and the Bankers' Surety Co. of Cleveland, Ohio, as surety, are held and firmly bound unto Elkhorn Drainage District, second party, in the sum of thirty dollars per day as liquidated damages for the noncompletion of the contract hereinafter mentioned, said per diem damages to commence with the first day of January, nineteen hundred eleven, and continue for each day until the work hereinafter mentioned. is fully completed, for the payment of which sum, well and truly to be made, we hereby bind ourselves, our successors and assigns.

"Dated this 30th day of December, nineteen hundred ten.

"Whereas on the 15th day of December, nineteen hundred nine, first party entered into a contract in writing with second party, a drainage district organized under chapter 153 of the Laws of Nebraska of 1907 and amendments thereto; and

"Whereas said contract provided that said first party should do certain. excavating and construct certain embankments, and do certain clearing and grubbing, all with reference to the straightening of the channel of the Elkhorn river through Dodge and Washington counties, Nebraska; and

"Whereas said contract provided that all of said work should be commenced on or before the first day of March, nineteen hundred ten, and be entirely completed on or before the thirty-first day of December, nineteen hundred ten; and

"Whereas, said party entered into a bond with second party in the sum of ten thousand dollars for the faithful performance of said contract, in which bond the Title Guaranty & Surety Co., was surety; and

"Whereas, the time for the completion of said contract has nearly expired and only a small portion of said work has been done, and it is now known. that the very large majority of said work cannot be completed by the expiration of the time provided therefor in said contract; and

"Whereas, said work provided in said contract to be done, contemplated an expenditure of more than thirty thousand dollars, estimated cost to be paid to said first party; and

"Whereas said work contemplated the expenditure of many thousands of dollars in addition thereto for right of way and other expenses, all of said work above mentioned relating to what is known as the 'river cut-off work'; and

"Whereas said river cut-off work constitutes the 'trunk line' of a more comprehensive drainage system now being established by said second party, the total expenditures for said drainage system being considerably in excess of two hundred thousand dollars; and

"Whereas nearly all of said drainage work has now been completed except the river cut-off work; and

"Whereas the balance of the drainage system other than the river cut-off work is dependent in part for its effectiveness upon the completion of said river cut-off work, and will not furnish adequate relief or do its full measure of service without the completion of said river cut-off work; and

"Whereas the benefits that said second party will obtain from said drainage system will be several multiples of the cost thereof, being a benefit of from six hundred thousand dollars to one million dollars; and

"Whereas said first party admits that it is impossible to finish said work by the contract time therefor; and

"Whereas said second party has the right to declare a forfeiture of said contract and has a right to take steps to arrange with some one else to do said work; and

"Whereas said first party desires to do said work and to have additional time therefor; and

"Whereas said the Title Guaranty & Surety Co. desires said second party not to declare a forfeiture of said contract and not to take steps to employ some one else to do said work, but desires that said first party be permitted to proceed to do said work and to have additional time therefor; and

"Whereas said second party will be greatly damaged by the delay in doing said work which is admitted by the parties hereto to amount to thirty dollars per day as damages, commencing on the first day of January, nineteen hundred eleven; and

"Whereas it is agreed that said contract above mentioned and said bond above mentioned are not in any way modified or changed, but shall continue in full force and effect in all the provisions thereof, said second party, however, omitting to exercise its right and privilege at the present time to declare a forfeiture of said contract and bond, and omitting to exercise its right at the present time to take steps to employ some one else to do said work or any part thereof, but reserving the right to take either or both of said steps at its election at some future date should it deem such course necessary for its protection:

"Now, therefore, the conditions of this obligation are such that if said first party shall fully perform said contract within one year from the time limit for the completion thereof as originally contracted, that is, if said first party shall complete said contract by the thirty-first day of December, nineteen hundred eleven, then this obligation to be null and void, otherwise to remain in full force and effect, the liability hereon in such case being for the payment of thirty dollars per day as agreed and liquidated damages commencing with January first, nineteen hundred eleven, and continuing until said contract is fully performed."

November 21, 1911, the drainage company quit work and notified the district that on account of financial troubles it could not proceed further. On the same day the district notified both the drainage company and the surety company, as required by the contract, that, unless the work was expedited within ten days from the date of the notice, it would proceed to employ additional force to complete the work. No effort having been made either by the drainage company or the surety company to proceed with the work, at the expiration of the ten days' notice the district leased the dredge, used in the work, from the drainage company and proceeded with the work, which was finally completed on the 10th of May, 1912. The lease of the dredge provided:

"It is agreed, and a part of the condition hereof, that if either of the surety companies involved in this contract desires to take possession of said work and complete it, that then the drainage district will assign its interest in this lease to said surety company for that purpose. It is further agreed that in the employment of men to operate said dredge reasonable consideration will be given to the views and wishes of said drainage company as to who shall be employed. It is further agreed that the party operating said dredge shall use its best judgment to maintain said dredge in repair and in the incurring of obligations in the completion of said work and that said party shall keep a careful statement of all expenditures in the completion of said work, charging all of such expenses to the drainage company as costs of completing said contract. The first party reserves the right to at all times name two of the men who shall be employed upon said dredge. This contract shall be considered as supplemental to the original contract between the parties, and on completion of the work settlement shall be made in conformity therewith."

The surety company set up in its answer by way of counterclaim that the dredge was lost by reason of the negligence of the district,

but offered no evidence tending to support this allegation of its answer.

It was said in argument that by the lease of the dredge the district appropriated the work, dredge, and appliances used in connection therewith, and precluded the contractor from the further performance of his contract, and that the district attempted both to declare the contract forfeited and to hold it in force. In other words, to treat the contract as abandoned, exclude the contractor from the work, and at the same time impose upon the surety company the liability which it had assumed. We think the language of the lease itself shows clearly that the very reverse of this contention is true. An examination of the record satisfies us that the district never, by the provisions of the lease or otherwise, attempted to declare the contract forfeited; on the contrary, it studiously avoided doing so. When notified by the drainage company that, because of financial difficulties, it was unable to go on, and realizing that some action was necessary, the district served both the drainage company and the surety company with notice, in the manner provided by the contract, that the work was not progressing satisfactorily, and, if not remedied at the expiration of ten days, it would employ additional force to complete the work. And the lease of the dredge by its very terms continued the original contract and all obligations thereunder in full force and effect. It provided that the surety company, if it so desired, could take charge of the work, and in that event the district would turn over the possession of the dredge; also that if the district continued the work it should keep a careful record of all expenditures, charging all expenses to the drainage company as cost of completing the contract; that "this contract shall be considered as supplemental to the original contract between the parties and on completion of the work settlements shall be in conformity therewith." The record shows that pursuant to the provisions of the lease weekly reports were made by the engineer of the district in charge of the work to the drainage company, showing the progress of the work and all disbursements made in connection therewith, which would have been an entirely unnecessary proceeding if the district had terminated the contract by declaring it forfeited, under the provisions of the contract which authorized that to be done, for in such event the drainage company would have had no interest in what happened thereafter. There is nothing in the record tending to show unnecessary delay in the prosecution of the work by the district after it took possession of the dredge, and we think the district court rightly concluded that there was no termination of the contract and that all of the acts of the district in prosecuting the work were conducted under the terms of, and in conformity with, its provisions.

[1] It was also argued that, because the district changed the line of the excavation in some respects, that constituted a change of the contract and relieved the surety company from liability. As we read the contract, the right to make these changes was expressly reserved to the district. Moreover, the record shows that the changes made

were minor in character and did not increase the amount of the work to be done or cause any delay whatever; and for this reason the trial court found that no substantial. alterations of the contract were shown to have been made to the prejudice of the drainage company. This finding, we think, was undoubtedly right, for, under the terms of the contract, in no event could the changes made terminate the contract or release the surety; the only effect of such changes would be to extend the time for completing the work in case it took a greater number of days to do the work with the changes than would be necessary if the work was performed as shown on the plans. The evidence shows conclusively, we think, that the changes made, instead of increasing, materially decreased the amount of work to be done, thus necessarily shortening the time required to perform it, and, as the surety company was in no way injuriously affected by the changes, it was not released from liability by reason thereof. Graham v. United States, 188 Fed. 652, 110 C. C. A. 465; Atlantic Trust & Deposit Co. v. Town of Laurinburg, 163 Fed. 690, 90 C. C. A. 274.

[2] It is next contended that the indemnity contemplated by the bond must be adjudged a penalty and not liquidated damages, and in respect of this contention it was said at the argument that the bond by its terms fixed the amount of damage actually incurred at $30 per day, and then provided that on account of the loss thereby sustained the surety company should pay $10,980. This contention can, in our opinion, be sustained only by giving to the contract and bond an unnatural, strained, and unwarranted construction. There is no such provision either in the contract or the bond, and a court of law is not at liberty to make a new contract other and different from that which the parties have mutually entered into. The court has no dispensing powers, and the inquiry always is, not whether the parties have acted wisely in respect to the stipulations embodied in their contract, but rather what was the meaning and intent of the parties at the time the contract was entered into; and, when that is clearly ascertained from the language used by the parties themselves, it must be given effect. It is difficult to conceive how language could more aptly express the obligation of the surety company in case of default than the language employed in the bond now before the court. The plain provisions of both the contract and bond are that the district contracted to get, and the surety company contracted to pay, $30 per day for each day's delay in the performance of the work after December 31, 1910, provided the work was not completed by the 31st day of December, 1911. The actual damage for this year's delay to the inhabitants of the district, independent of the stipulated damages, would necessarily be wholly uncertain and incapable of ascertainment, depending very much upon weather conditions. The work contemplated by this contract was the main outlet for an extensive drainage district, and the actual damage to the inhabitants of the district to be benefited by this system of drainage work would necessarily depend very largely upon whether the year 1911 was dry or attended with an unusual amount of rainfall. That the district would suffer some damage in any event is admitted by the recitals in the bond,

which are binding upon the parties as to the physical conditions existing at the time the bond was executed, and it was because the actual damage was wholly uncertain and incapable of being ascertained that the parties agreed that upon default $30 per day from January 1, 1911, should be the measure of damage. And this amount, in view of the magnitude of the work and the possible loss to.the inhabitants of the district, was, we think, entirely reasonable. The rule in cases of this kind is thus stated by the Supreme Court in Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 662, 22 Sup. Ct. 248, 46 L. Ed. 366:

"The decisions of this court on the doctrine of liquidated damages and penalties lend no support to the contention that parties may not bona fide, in a case where the damages are of an uncertain nature, estimate and agree upon the measure of damages which may be sustained from the breach of an agreement. On the contrary, this court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them, and that whether a particular stipulation to pay a sum of money is to be treated as a penalty, or as an agreed ascertainment of damages, is to be determined by the contract, fairly construed; it being the duty of the court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract."

See, also, Brooks v. City of Wichita, 114 Fed. 297, 52 C. C. A. 209; Turner v. City of Fremont, 170 Fed. 259, 95 C. C. A. 455; Wood v. Niagara Falls Paper Co., 121 Fed. 818, 58 C. C. A. 256; Barber Asphalt Paving Co. v. City of Wabash, 43 Ind. App. 167, 86 N. E. 1034; City of Salem v. Anson, 40 Or. 339, 67 Pac. 190, 56 L. R. A. 169, 91 Am. St. Rep. 485. The cases just cited and many others that might be referred to sustain the proposition that where the damages to be ascertained growing out of the breach of a contract are uncertain in amount, and the parties mutually agree, in language clearly expressive of such agreement, that a certain sum shall be the damages in case of a failure to perform, no sound principle or rule applicable to the construction of contracts will enable a court of law to say that the parties to the contract intended something else.

The surety company is not entitled to recover on its counterclaim for the dredge which the drainage company had pledged to it. The burden was on the surety company to prove its counterclaim, and in doing so to show by satisfactory evidence that the dredge was lost by the negligence of the district. This it wholly failed to do.

The judgment of the District Court is affirmed.