Argued January 7, affirmed February 19, petition for
rehearing denied March 25, 1969

PORTLAND STAGES, INC., ᴇᴛ ᴀʟ, *Appellants,*
*v.* CITY OF PORTLAND ᴇᴛ ᴀʟ,
*Respondents.*
450 P. 2d 764

634

*Peter G. Voorhies,* and *Clifford B. Alterman,* Portland, argued the cause for appellants. With them on the briefs were Kell & Alterman, Portland.

*Lamar Tooze,* Portland, argued the cause for respondent Rose City Transit Co., and *Robert L. Hurtig,* Chief Deputy City Attorney, Portland, argued the cause for respondents City of Portland, Terry D. Schrunk et al. With them on the brief was Alexander G. Brown, City Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

SLOAN, J.

Plaintiffs operate passenger bus transportation systems in the greater Portland area. Defendant Rose City Transit Co. is a mass transportation carrier whose routes are confined to an area bounded by the corporate limits of the city of Portland "and within a radius of three airmiles beyond the corporate limits" of the city. ORS 767.035(1).[1] The same statute ex-

---

[1] ORS 767.035. "This chapter, except ORS 767.990, does not apply to persons or motor vehicles:

"(1) While being used in the transportation of persons for hire in vehicles having a seating capacity of more than five per-

empts such carriers from Chapter 767 ORS relating to the regulation of motor carriers by the Public Utility Commissioner and subjects it to the regulation of the city of Portland.

In 1962, the city adopted an ordinance which granted defendant Rose City Transit Co. a ten-year franchise to operate its buses on the city streets and over such additional area as the city could lawfully regulate. From time to time since then the city has

---

sons and operating wholly within the incorporated limits of a city in Oregon and within a radius of three airmiles beyond the corporate limits of such city. * * *."

231.420 Definitions adopted; municipal regulation of public utilities. (1) The definitions contained in ORS 757.005 and 757.010 apply to this section.

(2) Every city may:

(a) Determine by contract or prescribe by ordinance or otherwise, the quality and character of each kind of product or service to be furnished or rendered by any public utility, furnishing any product or service within such city, and all other terms and conditions upon which any public utility may be permitted to occupy the streets, highways or other public property within such city and exclude or eject any public utility therefrom.

(b) Require any public utility, by ordinance or otherwise, to make such modifications, additions and extensions to its physical equipment, facilities or plant or service within such city as shall be reasonable or necessary in the interest of the public, and designate the location and nature of all additions and extensions, the time within which they must be completed, and all conditions under which they must be constructed.

(c) Fix by contract, prescribe by ordinance, or in any other lawful manner, the rates, charges or tolls to be paid to, or that may be collected by any public utility, furnishing any product or service within such city. No schedule of rates, charges or tolls, fixed in the manner provided in this paragraph, shall be so fixed for a longer period than five years. Whenever it is proposed by any city to enter into any contract, or to enact any ordinance, or other municipal law or regulation concerning the matters specified in this paragraph, a copy of such proposed contract, ordinance or other municipal law or resolution shall be filed with the Public Utility Commissioner of Oregon before the same may be lawfully signed or enacted, as the case may be, and the commissioner shall thereafter have 90 days within which to examine into the terms thereof. If the commissioner is of the

enacted additional ordinances extending and changing the routes of the transit company both within the corporate limits of the city and over routes within the three airmile radius beyond the city limits. Certain of these routes extending beyond the city limits conflict and compete with plaintiffs' routes. Plaintiffs now attack these ordinances. They make various charges of unconstitutionality and invalidity that will be mentioned in order. The trial court rejected plaintiffs' claim for injunctive relief. Plaintiffs appeal.

The first and most direct challenge is the claim that ORS 767.035(1) is unconstitutional because it is an unlawful delegation of legislative power to the city council without specifying standards of regulation and that the classification of these utilities, specified in the statute, is capricious and arbitrary.

opinion that in any respect the provisions of the proposed contract, ordinance or other municipal law or resolution are not in the public interest, he shall file, in writing, with the clerk or other officer who has the custody of the files and records of the city, his reasons therefor. If the objections are filed within said period of 90 days, no proposed contract, ordinance or other municipal law or regulation shall be valid or go into effect until it has been submitted to or ratified by the vote of the qualified electors of the city. Unless and until a city exercises its powers as provided in this paragraph, the commissioner is vested with all powers with respect to the matters specified in this paragraph. If the schedule of rates, charges and tolls is fixed by contract, ordinance or other municipal law or regulation and in the manner provided in this paragraph, the commissioner has no power or jurisdiction to interfere with, modify or change it during the period fixed thereby. Upon the expiration of said period such powers shall again be vested in the commissioner, to be exercised by him unless and until a new schedule of rates for such service or product is fixed or prescribed by contract, ordinance or other municipal law or regulation in the manner provided in this paragraph.

(d) Provide for a penalty for noncompliance with the provisions of any charter provision, ordinance or resolution adopted by the city in furtherance of the powers specified in subsection (2) of this section.

■ There can be no dispute of the need for a coordinated, consolidated mass transportation system that extends beyond the boundaries of our cities. This is particularly true of metropolitan Portland. The arguments advanced by plaintiffs against the legislative choice of placing the responsibility of regulating such carriers on the city governing body and the method of doing so are answered by *Warren v. Marion County et al,* 1960, 222 Or 307, 353 P2d 257; *Portland v. Public Service Commission,* 1918, 89 Or 325, 173 P 1178; *Salem v. Anson,* 1902, 40 Or 339, 67 P 190, 56 LRA 169, are cases specifically upholding the legislative grant to municipalities of the power to regulate utilities. See also *City of Salem v. Salem Water, Light & Power Co.,* 255 F 295 (9th Cir 1919). The delegation was a proper one.

A more difficult question is presented by the provisions of ORS 221.420(2)(c) which, it is argued, conflicts with ORS 767.035(1). It will aid in considering ORS 221.420(2)(c) to set forth all of section 221.420 in the margin.

The ordinances in question have never been submitted to the Public Utility Commissioner. It is claimed by plaintiffs that ORS 221.420(2) requires compliance with the specified procedure and that the failure of the city to do so invalidates the ordinances.

The forerunner of ORS 221.420 was enacted as a part of Oregon Laws 1911, ch 279, a general statute providing for the regulation of all utilities. Section 61 of that Act provided that municipalities shall have the power by "contract, ordinance or otherwise" to determine the quality and amount of service to be rendered by any public utility furnishing any service within the municipality. The power was subject to § 41 of the Act which gave the Public Utility Commis-

sion the authority to review any rates fixed by the municipality. In *Portland v. Public Service Commission, supra,* 89 Or 325, the power of the utilities commission to change the rates fixed by the municipality was approved. However, that case, as did *Woodburn v. Public Service Commission,* 1916, 82 Or 114, 127, 161 P 391, recognized that the authority of the utilities commission to review the rates set by a city "must not be confused with the right of the city to exercise its contractual power to agree with a public service company upon the terms of a franchise." The Woodburn case was concerned with the 1911 sections we have just referred to.

ORS 221.420 in its present form was enacted as Oregon Laws 1931, ch 103, § 8, also a general revision of the utility laws generally and created the office of Public Utility Commissioner. Subsection (1) of § 8 of the 1931 Act, now subsection (2)(a) of ORS 221.420, is a grant of general authority to municipalities to regulate utilities within the city and to regulate the terms and conditions for the use of city streets. Subsection (2) of the 1931 Act, then and now, as subsection (2)(b) of ORS 221.420, authorizes the city to make such requirements "as shall be reasonable or necessary in the interest of the public," and to designate other requirements. It is only in subsection (3) of the 1931 Act, now subsection (2)(c) of ORS 221.420, that the state utility commissioner is given any power of review and that power, as it was in the first enactment in 1911, is limited to the review of rates.

ORS 767.035(1), on the other hand, was first enacted in 1947, Oregon Laws, 1947, ch 467, § 3. The 1947 statute exempted motor transportation within the city limits of a city from the control of the Public Utility Commissioner and from the requirements of the

Motor Transportation Code. The latter statute was amended by Oregon Laws, 1949, ch 488, § 2(9), to extend the exemption and expand the municipal regulation to an area within a "radius of three airmiles" beyond the corporate limits of a city.

██ This legislative history is conclusive that ORS 221.420(2)(c) is not in conflict with or a restriction on ORS 763.035(1). The earlier statute ORS 221.420 (2)(c), is obviously limited to the regulation of rates. The two statutes are designed to accomplish different purposes and it is not our function to decide that the legislature has enacted conflicting statutes unless the acts clearly require it. *Peters et al v. McKay et al,* 1952, 195 Or 412, 440, 238 P d 225, 246 P2d 585.

█ A third argument is that the challenged ordinances exceed the charter authority of the city of Portland and that insufficient notice was given in respect to hearings on the ordinances. We agree with the trial court that this argument is without merit.

It is our view, therefore, that the decree should be affirmed.